UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FRANK A. FARRICKER,

                    Plaintiff,

                - against -

PENSON DEVELOPMENT, INC.,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**JUDGE BATTS**

07 Civ. ( )

**07 CV 11191**

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff Frank A. Farricker ("Farricker" or "plaintiff") through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant Penson Development, Inc. ("Penson Development" or "defendant") as follows:

NATURE OF ACTION

DEC 1 2 2007
U.... S.D.N.Y.
CASHIERS

1.     Farricker brings this diversity action to remedy defendant's breach of an employment contract and unlawful reduction of his wages in violation of New York Labor Law § 190 et seq. ("Labor Law").

2.     Farricker seeks declaratory relief and damages and other appropriate legal and equitable relief pursuant to New York common law and Labor Law.

PARTIES

3.     Farricker is a citizen and resident of the State of Connecticut. From August 1, 2004, until August 2007, he served as defendant's Director of Acquisitions.

4.     Penson Development is a New York corporation engaged in the real estate business. Its principal place of business is 915 East 179th Street, Bronx, New York.

248115 v1

1

JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 because of the diversity of the parties and because the amount in controversy exceeds $75,000.

6.      As defendant resides in the Southern District of New York, venue is proper within this district pursuant to 28 U.S.C. § 1391(a)(1) and (c).

FACTUAL ALLEGATIONS

7.      Farricker earned a bachelor's degree from George Washington University in 1986.  After college, he worked in the restaurant industry, primarily in a management capacity.  In 1999, plaintiff received a Masters of Science Degree in Real Estate Development from Columbia University.  Before starting employment at Penson Development, plaintiff worked in real estate from 1999 through 2004.

8.      In August 2004, Farricker began working for Penson Development.  Penson Development is the development arm of The Penson Companies, which is a group of real estate entities that are in the business of acquiring, owning, operating, managing and selling residential and commercial real estate.  Penson Development has developed thousands of New York City housing units.  When Penson Development participates and acts as the developer of a project, it does so through an affiliated entity.

The Employment Agreement

9.      At the time that he was hired, on August 1, 2004, Farricker and Penson Development entered into an Employment Agreement, attached hereto as Exhibit A ("Agreement").

10.      The Agreement states that Farricker's "Employment Term" runs until July 31, 2005 or earlier termination as provided for in the Agreement.  (Agreement ¶ 2.5)

248115 v1                                                2

11.    The Agreement provides that plaintiff may be required to perform services for Penson Development or any affiliate of Penson Development (a "Penson Company"). (Id. at 1)

12.    The Agreement states that, in addition to a base salary, Farricker is entitled to "Participation Payments" for certain deals ("Covered Deals") that defendant or any Penson Company consummates during his employment. (Id. ¶ 2.2) Specifically, the Agreement states that, with respect to each Covered Deal, Farricker will receive 15% of any cash distribution made to or other amounts paid to defendant or any Penson Company, not including amounts covering certain costs, expenses, fees, and capital contributions. (Id.)

13.    The Agreement provides that, within 30 days of receiving a cash distribution or other applicable revenue, defendant or the relevant Penson Company shall pay Farricker his Participation Payments. (Id.)

14.    Under the Agreement, Farricker retains his then current rights to Participation Payments if his employment was terminated without cause.

### The Agreement Automatically Renewed Each Year

15.    By its terms, the Agreement expired on July 31, 2005, but Farricker continued to work for Penson Development until August 2007. During this time, he worked in the same capacity and tendered the same services that he rendered during the initial term of the contract.

16.    The Agreement automatically renewed each year, and the terms and conditions of the Agreement, including Farricker's right to Participation Payments, continued in effect.

<u>Farricker is Entitled to Participation Payments</u>

17.    During the course of plaintiff's employment, defendant and/or its affiliates consummated several Covered Deals.  One such deal occurred in March 2005, when Mohegan Apartments Associates sold the Mohegan Apartments for $17,100,000, with a net profit of $6,699,084.  The defendant or a Penson Company had a 44% interest in Mohegan Apartments Associates, and Edward Penson ("Penson"), President of Penson Development, was general partner of Mohegan Apartments Associates.

18.    Farricker provided valuable services to defendant and various Penson Companies in connection with most of the Covered Deals consummated during plaintiff's employment.  For example, with regard to the Mohegan Apartments' sale, plaintiff helped structure the sale, assisted and advised in all facets of negotiation, secured and supervised the appropriate sale broker, and attended the closing in place of Penson.

19.    Following many of these Covered Deals consummated during plaintiff's employment, defendant and/or various Penson Companies received cash distributions and/or other applicable revenue.  Plaintiff, however, never received any Participation Payments.

<u>Defendant Terminates Plaintiff's Employment Without Cause</u>

20.    In the fall of 2006, Farricker ran for elected office.  After losing the election, plaintiff continued to work for Penson Development in the same capacity that he had before the election.

21.    On or about May 22, 2007, Farricker informed Penson that he intended to run for elected office again in the fall of that year.

22.    Subsequently, Melissa Barbera ("Barbera"), General Counsel of Penson Development, told Farricker that Penson would not permit him to return to his job if he lost the fall

election.   According to Barbera, Penson and Barbera had discussed finding a replacement for Farricker.

23.    On or about August 1, 2007, Barbera asked Farricker to sign a letter of resignation.  Plaintiff refused to sign the letter, as he intended to continue working for Penson Development.

24.    On Friday, August 3, 2007, Penson terminated Farricker's employment, effective immediately.  Penson terminated Farricker's email account and server access.  Penson asked Farricker to return defendant's computer and Blackberry and to clean out his desk by Wednesday, August 8, 2007.  Penson also attempted to pay Farricker for unused vacation and sick time.

25.    Penson terminated Farricker's employment without cause.  The Agreement defines "Cause" as:  (a) reasonable evidence that plaintiff committed a felony, any lesser crime or offense involving the property of defendant or any Penson Company, or a crime or lesser offense involving moral turpitude; (b) any acts or omissions constituting gross negligence, willful misconduct or a breach of the duty of loyalty to defendant or any Penson Company; (c) any failure to perform satisfactorily duties for defendant or any Penson Company; (d) any material breach of the Agreement; or (e) any commission of an act of fraud or dishonesty toward defendant or any Penson Company.  (Agreement ¶ 3.1.3)  None of these circumstances existed.

<u>Defendant Refuses to Honor the Agreement</u>

26.    Plaintiff fulfilled all his obligations pursuant to the terms of the Agreement with defendant.

27.    Plaintiff requested that defendant pay him the Participation Payments he is entitled to pursuant to the Agreement.

248115 v1

28.    Defendant has made it clear that it has no intention of honoring its obligation under the Agreement to pay Farricker the Participation Payments.

<u>FIRST CLAIM FOR RELIEF</u>

29.    Plaintiff repeats and realleges paragraphs 1 through 28 as if fully set forth herein.

30.    By the acts and practices described above, defendant breached the Agreement with Farricker.

31.    Defendant has breached its contractual obligations to plaintiff, whereby he has suffered and will continue to suffer damages unless and until this Court grants relief.

<u>SECOND CLAIM FOR RELIEF</u>

32.    Plaintiff repeats and realleges paragraphs 1 through 31 as if fully set forth herein.

33.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that, under the Agreement, he retains the right to Participation Payments for all Covered Deals that defendant or a Penson Company consummated during his employment, regardless of whether defendant or a Penson Company has received a cash distribution or other applicable revenue during his employment.

<u>THIRD CLAIM FOR RELIEF</u>

34.    Plaintiff repeats and realleges paragraphs 1 through 33 as if fully set forth herein.

35.    By failing to pay the Participation Payments provided under the Agreement, defendant has reduced Farricker's wages in violation of Labor Law § 193(1).

36. Defendant's failure to pay Farricker his full wages was "willful" within the meaning of Labor Law § 198(1-a).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) awarding damages for defendant's breach of contract, including, but not limited to, Participation Payments;

(b) declaring that the acts and practices complained of herein are in violation of the Agreement;

(c) declaring that, under the Agreement, plaintiff retains the right to Participation Payments for all Covered Deals that defendant or a Penson Company consummated during his employment, regardless of whether defendant or a Penson Company has received a cash distribution and/or other applicable revenue during his employment;

(d) entering judgment against defendant in the amount of the wages improperly withheld in violation of New York Labor Law;

(e) awarding liquidated damages against defendant equal to 25% of the wages withheld, pursuant to New York Labor Law § 198;

(f) entering judgment against defendant in the amount of plaintiff's attorneys' fees, costs and disbursements pursuant to New York Labor Law §§ 198(1), (1-a); and

(g) granting such other and further relief as this Court deems necessary and proper.

<u>JURY TRIAL DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands

a trial by jury in this action.

Dated: New York, New York
       December 12, 2007

VLADECK, WALDMAN, ELIAS
& ENGELHARD, P.C.

By: _____

Debra L. Raskin (DR 5431)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

**EXHIBIT A**

PCSF Draft 78-2218-04

# EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (the "Agreement"), dated as of August 1, 2004 (the "Effective Date"), between PENSON DEVELOPMENT, INC., a corporation organized under the laws of the State of New York ("Employer"), and Frank A. Farricker ("Executive").

WHEREAS, Employer and its affiliates are in the business of acquiring, owning, operating, managing and selling residential and commercial real estate (each, a "Real Estate Project");

WHEREAS, Executive desires to provide services to Employer and Employer desires to retain the services of Executive;

WHERAS, Executive may be required to perform such services for Employer or any affiliate of Employer (Employer or such affiliate, hereinafter, a "Penson Company" and Employer and all such affiliates collectively, hereinafter, the "Penson Companies"); and

WHEREAS, Employer and Executive desire to formalize the terms and conditions of Executive's employment with Employer.

NOW, THEREFORE, Employer and Executive hereby agree as follows:

1.   Employment.

   1.1.   General.

1.1.1   Effective as of the Effective Date, Employer hereby employs Executive in the capacity of Director of Acquisitions. Executive hereby accepts such employment upon the terms and subject to the conditions herein contained. Commencing on the Effective Date, Executive shall, subject to the direction and supervision of the President of Employer, have the following duties: (a) identifying potential Real Estate Projects for (i) investment by or for the account of a Penson Company or (ii) investment by or resale to others of either the Real Estate Project or the contract pursuant to which a Penson Company acquired the right to acquire the Real Estate Project, (each such transaction a "Deal" and collectively, the "Deals"), (b) researching and performing due diligence with respect to each such Deal, working on all aspects of such Deals, including, without limitation, seeking loan commitments from banks and other capital sources and (c) interfacing with legal counsel, banks and accountants with respect to such Deals in order to consummate such Deals which have been approved by the Board of Directors of Employer (the "Board of Directors"). Executive agrees to perform for each of the Penson Companies the foregoing duties and responsibilities as well as such other duties as may be requested by the Board of Directors, the President and/or the Chief Executive Officer of Employer or his or her designee.

#378644

1.1.2   During Executive's employment with Employer, Executive will report directly to, and take direction from, the President and/or the Chief Executive Officer of Employer.

1.2.   Exclusive Full-Time Position. Executive, during his employment with Employer, will devote his best efforts and all of his business time, attention and skills to the business and affairs of the Penson Companies, it being understood that, except as set forth on Exhibit A attached hereto, Executive shall not be employed by or provide services to any other person or entity during Executive's employment with Employer, including, without limitation, any services as a broker. Notwithstanding the foregoing, Executive shall be permitted to (i) serve on civic, professional or charitable boards or committees, and (ii) manage personal investments; provided, however, that Executive may not engage in any of the activities described in this sentence to the extent such activities prevent Executive from devoting substantially all of his business time to the Penson Companies or adversely affect the performance of Executive's duties and responsibilities to the Penson Companies. Executive represents and warrants that Exhibit A attached hereto sets forth all of the current real estate projects in which Executive is involved as of the date hereof.

1.3.   Location of Employment. Executive's principal place of employment during his employment with Employer shall be New York, New York or such other location as Employer shall designate. Executive acknowledges that the proper performance of his duties may require travel and Executive agrees to engage in such travel as may be required during his employment.

2.   Compensation and Benefits.

2.1.   Salary. During the Employment Period Employer will pay to Executive a base salary ("Base Salary") at an annual rate of seventy two thousand dollars ($72,000), payable in equal monthly installments in arrears of $6,000.

2.2.   Participation. The compensation set forth in this Section includes Executive's Base Salary and any amounts payable pursuant to this Section 2.2. shall be reduced by any Base Salary paid to Executive pursuant to Section 2.1. above. Executive shall be entitled to the following amounts (each a Participation Payment and collectively the "Participation Payments") for each Deal consummated by a Penson Company during Executive's employment hereunder:

(i)   with respect to each Deal that is an investment by or for a Penson Company's account, Employer (or in lieu thereof the relevant Penson Company) shall pay to Executive an amount equal to fifteen percent (15%) of each cash distribution made with respect to such acquisition, including, without limitation, any distributions made from the net proceeds of a sale or refinance with respect to the relevant Real Estate Project; provided, however, that Executive shall not be entitled to (i) any portion of any amount paid to any Penson Company that is return of a Penson Company's capital or payment for costs or expenses incurred by a Penson Company with respect to such Real Estate Project or (ii) any portion of any amount paid to a Penson Company in respect of management fees or fees charged by any Penson

Company for other services including, without limitation, painting, roofing, repairs, etc.; and

(ii)    with respect to each Deal that is an investment by others, Employer (or in lieu thereof the relevant Penson Company) shall pay to Executive fifteen percent (15%) of all amounts paid to the relevant Penson Company in connection with the relevant Real Estate Project, including, except as hereinafter provided, any fees paid to the general partner such as, by way of example only, fees to guaranty loans, brokerage fees and syndication fees; provided, however, that Executive shall not be entitled to (i) any portion of any amount paid to a Penson Company that is return of a Penson Company's capital or payment for costs or expenses incurred by a Penson Company with respect to such Real Estate Project or (ii) any portion of any amount paid to a Penson Company in respect of management fees or fees charged by any Penson Company for other services including, without limitation, painting, roofing, repairs, etc.; and

(iii)    with respect to each Deal that is a resale of a contract pursuant to which a Penson Company acquired the right to acquire a Real Estate Project, Employer (or in lieu thereof the relevant Penson Company) shall pay to Executive fifteen percent (15%) of the net amount the relevant Penson Company is paid, after deducting all transactional expenses, with respect to such transaction

All amounts payable pursuant to this Section 2.2 shall be paid to Executive within thirty (30) days of the relevant Penson Company's receipt of the applicable amounts.

Executive acknowledges and agrees that the transactions contemplated pursuant to a letter agreement dated January 23, 2004 between Executive and The Penson Corporation shall be considered, for all purposes, Deals pursuant to this Agreement and that (a) the Executive is not an independent broker for such Deals and as such is not entitled to any compensation with respect to such Deals except as set forth herein and (b) such letter agreement is of no further legal force or effect and all rights of Executive and The Penson Corporation thereunder are, as of the Effective Date, null and void.

2.3.    Benefits.    In addition to the Base Salary and additional compensation set forth in Section 2.2, Executive shall also be entitled to the following benefits during Executive's employment hereunder:

2.3.1.    Expenses.    Employer shall, subject to Employer's expense reimbursement policies as established or amended from time to time, reimburse Executive for expenses that have been approved prior to being incurred and that Executive reasonably incurs in connection with the performance of his duties (including business travel (but not commuting) expenses); provided, that Executive has provided Employer with documentation of such expenses in accordance with Employer's expense reimbursement policies and applicable tax requirements.

2.3.2.    ~~Employer Plans.   Executive will be entitled to participate in the employee benefit plans and programs generally provided to employees by Employer from time to time, including, but not limited to, participation in any 401(k), life insurance, health and accident, medical and dental, disability and retirement plans and programs, subject to and on a basis consistent with the~~

~~terms, conditions and overall administration of such plans and programs. The foregoing, however, shall not require Employer to establish or maintain any such employee benefit plan or program. Furthermore, Employer retains the unilateral right to amend, modify or terminate any of its employee benefit plans and programs at any time. [Executive acknowledges that as of the Effective Date there are no such benefit plans or programs for which Executive would qualify.]~~

~~[2.3.3. Vacation. Executive shall be entitled to [_____ *insert amount* _____] working days of paid vacation leave per year. Vacation must be scheduled at those times most convenient to the Penson Companies' business as reasonably determined by the President or Chief Executive Officer of Employer.] [Note: We only need this provision if Executive is entitled to vacation greater than that provided pursuant to the company's vacation policy.]~~

2.4.    Taxes and Withholding.  Employer shall have the right to deduct and withhold from all compensation payable to Executive all Medicare, social security, and other federal, state and local taxes and charges which currently are or hereafter may be required by law to be so deducted or withheld.

2.5.    Employment Term.  Executive's employment by Employer pursuant to this Agreement shall commence as of the Effective Date and unless terminated in accordance with Section 3.1 shall continue for one year until July 31, 2005 (the "Initial Term"); provided, that on or before July 1, 2005 and each July 1 thereafter, Employer may at its option extend this Agreement for an additional year by providing Executive with written notice that it is exercising such option ( such additional year together with the Initial Term, the "Employment Term").

3.    Termination of Employment.

3.1.    Events of Termination.  Executive's employment with Employer will terminate upon the occurrence of any one or more of the following events:

3.1.1. Death.    In the event of Executive's death, Executive's employment will terminate on the date of death

3.1.2. Disability.  In the event of Executive's Disability (as hereinafter defined), Employer will have the option to terminate Executive's employment by giving a written notice of such termination to Executive.  For purposes of this Agreement, "Disability" means Executive's inability as a result of a physical or mental illness to perform his duties which has continued or is expected to continue for an aggregate of 90 days during any consecutive 365 day period, as determined in good faith by the President or the Chief Executive Officer upon the advice of an independent physician.  Notwithstanding any other provision in this Agreement to the contrary, Executive's compensation during any period that Executive is absent from the office (other than vacation) shall be determined by and payable in accordance with Employer's sick leave and long and short term disability policies.

3.1.3. Termination by Employer for Cause.  Employer may, at its

#378644

4

option, terminate Executive's employment for "Cause" upon giving written notice of such termination to Executive. "Cause" shall mean (i) reasonable evidence (as determined in good faith by the President and/or the Chief Executive Officer of Employer to indicate that Executive has committed a felony (other than traffic violations) or any lesser crime or offense involving the property of any Penson Company or moral turpitude or that could subject any Penson Company to disrepute within the community; (ii) any act(s) or omission(s) by Executive which constitute gross negligence, willful misconduct or a breach of Executive's duty of loyalty to any Penson Company; (iii) failure by Executive to satisfactorily perform his duties hereunder for any Penson Company or to comply with the reasonable instructions (other than a failure resulting from a Disability as defined in Section 3.1.2 hereof); (iv) material breach by Executive of this Agreement; or (v) Executive's commission of an act of fraud or dishonesty toward any Penson Company (including, without limitation, misappropriation of any funds, property or business opportunities (including, without limitation, any intellectual property or other proprietary information of any Penson Company).

      3.1.4. <u>Without Cause By Employer</u>. Employer may, at its option, terminate Executive's employment for any reason whatsoever (other than for the other reasons set forth above in this Section 3.1) by giving written notice of such termination to Executive, and Executive's employment shall terminate on the later of the date the written notice of such termination is given or the date set forth in such written notice.

      3.2. <u>Certain Obligations of Employer Following Termination of Executive's Employment</u>. Following the termination of Executive's employment under the circumstances described below, Employer will pay to Executive in accordance with its regular payroll practices the following compensation and provide the following benefits:

      3.2.1. <u>Other than Without Cause by Employer</u>. In the event that Executive's employment is terminated for any reason other than by Employer Without Cause pursuant to Section 3.1.4, Executive, his representative or his estate, as the case may be, shall be entitled to the following:

      (i)    Executive shall be entitled to that portion of any unpaid Base Salary up to and including the date of such termination and any earned but unused vacation up to and including the date of such termination (the "Accrued Amount");

      (ii)    any unreimbursed business expenses properly incurred prior to the date of such termination ("Expense Reimbursement"); and

      (iii)    all benefits generally available under the employee benefit plans, and the policies and practices of Employer, determined in accordance with the applicable terms and provisions of such plans, policies and practices, in each case, as accrued to or vested on the date of termination ("Accrued Benefits") or otherwise payable as a consequence of Executive's death or Disability.

In addition, (i) if such termination is due to Executive's death or Disability, Executive shall receive an additional payment to compensate him for the fair market value of each then current

Participation Rights, which fair market value shall be determined by Employer in good faith; provided, however, that in lieu of all or a portion of such payment Employer may at its option continue any or all of Executive's Participation Rights as determined by Employer on a case by case basis; and (ii) if such termination is a termination for Cause by Employer, any of Executive's then current Participation Rights shall be immediately, on the date of such termination, forfeited and Executive shall not receive any further payments in respect of such Participation Rights.

       3.2.2. <u>Without Cause by Employer</u>. In the event that Executive's employment is terminated by Employer Without Cause pursuant to Section 3.1.4 hereof, Executive shall be entitled to the following:

       (i)    subject to Executive's compliance with his obligations set forth in the Confidentiality and Fair Competition Agreement, continuing payments of Executive's then current Base Salary ("<u>Continuing Payments</u>") for the remainder of the Initial Term if such termination occurs on or before August 1, 2005 or the Employment Term if such termination occurs after August 1, 2005 and continuing until the next July 31 occurring after such termination (the "<u>Severance Period</u>") payable in accordance with the Company's payroll practices; and

       (ii)    the Accrued Amount, Expense Reimbursement and Accrued Benefits.

In addition, if such termination is due to Executive's death or Disability, Executive shall receive an additional payment to compensate him for the fair market value of each then current Participation Rights, which fair market value shall be determined by Employer in good faith; provided, however, that in lieu of all or a portion of such payment Employer may at its option continue any or all of Executive's Participation Rights as determined by Employer on a case by case basis

[Notwithstanding the foregoing, Executive understands and agrees that he has an obligation to mitigate the Continuing Payments payable to him by seeking, subject to his obligations set forth in the Confidentiality and Fair Competition Agreement, annexed hereto as Exhibit B, employment and that the Continuing Payments shall be reduced by any compensation earned by, or paid to, Executive during or in respect of the Severance Period on account of subsequent employment, consulting or any other services rendered in any capacity. Executive agrees to promptly notify Employer (to the attention of the President and/or Chief Executive Officer of Employer) in writing of any such compensation earned by, or paid to, Executive during or in respect of the Severance Period.]

       3.3.   <u>Nature of Payments</u>.   All amounts to be paid by Employer to Executive pursuant to this Section 3 are considered by the parties to be severance payments. In the event such payments are treated as damages, it is expressly acknowledged by the parties that damages to Executive for termination of employment would be difficult to ascertain and the above amounts are reasonable estimates thereof.

#378644

6

4.  Confidentiality and Fair Competition Agreement.  Executive's employment by Employer is subject to Executive executing the Confidentiality and Fair Competition Agreement annexed hereto as Exhibit A̶B.  Such agreement shall be deemed, upon execution, to be incorporated in and a part of this Agreement as if fully set forth herein.  Executive acknowledges that his employment with Employer under this Agreement is adequate consideration for the Confidentiality and Fair Competition Agreement.  Executive further acknowledges that Employer would not have entered into an employment relationship with Executive or this Agreement without Executive entering into and agreeing to be bound by the terms of the Confidentiality and Fair Competition Agreement

5.  Executive's Representations and Warranties.  Executive represents and warrants that neither the execution of this Agreement (including, without limitation, the Confidentiality and Fair Competition Agreement) nor the performance of his obligations hereunder will violate or conflict in any respect with any agreement or understanding with any person or entity (including, without limitation, any former employer) and that annexed hereto as Exhibit C are copies of all agreements relating to any restrictive covenants (such as a non-compete, non-solicit or confidentiality) currently applicable to Executive.

6.  Miscellaneous Provisions.

6.1.  Severability.  If in any jurisdiction any term or provision hereof is determined to be invalid or unenforceable, (a) the remaining terms and provisions hereof shall be unimpaired, (b) any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such term or provision in any other jurisdiction, and (c) the invalid or unenforceable term or provision shall, for purposes of such jurisdiction, be deemed replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

6.2.  Execution in Counterparts.  This Agreement may be executed in one or more counterparts, and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same agreement (and all signatures need not appear on any one counterpart), and this Agreement shall become effective when one or more counterparts has been signed by each of the parties hereto and delivered to each of the other parties hereto.

6.3.  Notices.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed duly given when delivered by hand, or five (5) day after mailing if mailed by registered or certified mail, postage prepaid, return receipt requested, or when delivered if sent by private courier service or via facsimile (with written confirmation of receipt) as follows:

If to Employer, to:

Penson Development, Inc.
275 Madison Avenue
New York, New York 10017

#378644                          7

Attn: Edward I. Penson, President and Chief Executive Officer

Copy to:

Thomas J. Malamud, Esq.
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue
New York, NY 10022-4441
Telefax No.: (212) 326-0806

If to Executive, to:

Frank A. Farricker
47 Sinawoy Road
Cos Cob, CT 06807

~~Copy to:~~

~~[ insert name and address        ]~~

or to such other address(es) as a party hereto shall have designated by like notice to the other parties hereto.

6.4.    Amendment.  No term or provision of this Agreement may be modified, amended, waived or discharged in any manner except by a written instrument executed by Employer and Executive. No course of dealing between the parties to this Agreement shall be deemed to affect or to modify, amend or discharge any provision or term of this Agreement.

6.5.    Entire Agreement.  This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and understandings of the parties hereto, oral or written, with respect to the subject matter hereof. No representation, promise or inducement has been made by either party that is not embodied in this Agreement, and neither party shall be bound by or liable for any alleged representation, promise or inducement not so set forth.

6.6.    Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflicts or choice of law provisions.

6.7.    Headings.  The headings contained herein are for the sole purpose of convenience of reference, and shall not in any way limit or affect the meaning or interpretation of any of the terms or provisions of this Agreement.

6.8.    Binding Effect; Successors and Assigns.  Executive may not delegate his duties or assign his rights hereunder. This Agreement will inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, legal representatives, and successors.

#378644                                          8

Employer may assign this Agreement to any entity purchasing all or substantially all of the assets of Employer.

     6.9.   Waiver, etc.  The failure of either of the parties hereto to at any time enforce any of the terms or provisions of this Agreement shall not be deemed or construed to be a waiver of any such term or provision, nor to in any way affect the validity of this Agreement or any term or provision hereof or the right of either of the parties hereto to thereafter enforce each and every term or provision of this Agreement. No waiver of any breach of any of the terms or provisions of this Agreement shall be effective unless set forth in a written instrument executed by the party against whom or which enforcement of such waiver is sought, and no waiver of any such breach shall be construed or deemed to be a waiver of any other or subsequent breach.

     6.10.  Continuing Effect.  Where the context of this Agreement requires, the respective rights and obligations of the parties shall survive any termination or expiration of the term of this Agreement, and more specifically, including, without limitation, Section 4.

     **6.11  Advice of Counsel.  Executive has been advised that this Agreement has been prepared by Pryor Cashman Sherman & Flynn LLP, the attorney for Employee; that Executive should retain his own counsel to review this Agreement, but Executive has declined to do so.**

     IN WITNESS WHEREOF, this Agreement has been executed and delivered by the parties hereto as of the date first above written.

                    PENSON DEVELOPMENT, INC.

                    By:_____

                      Name:  **Edward I. Penson**
                      Title:   **President**

                    _____
                    Frank A. Farricker

**Current Activities**

**Exhibit B**

**Attached Confidentiality and Fair Competition Agreement**

**Penson Development, Inc.**

**Confidentiality and Fair Competition Agreement**

This Confidentiality and Fair Competition Agreement made the 1st day of August, 2004, between Penson Development, Inc. (the "Employer") and Frank Farricker ("Employee").

In consideration of Employee's employment with the Employer and the future opportunities being afforded to Employee, Employee agrees to the following:

1. **Confidential Information.** Employee understands that to perform his duties with the Employer, he will have access to information relating to the business of the Employer and its affiliates (the Employer or each such affiliate, hereinafter, a "Penson Company" and the Employer and all such affiliates collectively, hereinafter, the "Penson Companies") that provides each of the Penson Companies with a competitive advantage (or that could be used to a Penson Company's disadvantage by a competitor), that is not generally known by persons not employed by a Penson Company, that could not easily be learned or determined by someone outside the Penson Companies, that the Penson Companies have obtained or developed by expending substantial effort and monies and the Penson Companies anticipate continuing to expend substantial effort and monies to obtain, develop and update, or that is proprietary information of one or more of the Penson Companies (collectively "Confidential Information"). Confidential Information includes, but is not limited to:

    a.     information concerning each Penson Company's past, present and prospective investors, brokers, service providers, suppliers, consultants, employees, partners, lenders and the relevant contacts with respect to each of the foregoing;

    b.     any and all versions of each Penson Company's proprietary computer software (including source and object code), hardware, firmware and documentation;

    c.     the functionality of each Penson Company's proprietary computer software, each Penson Company's future upgrade plans and future software products;

    d.     financial status and projections of each real estate project and of each Penson Company and each Penson Company's other projects,

including, but not limited to, the monthly income figures, expenses, forecasts, year to date revenue, potential projects and the general financial outlook of each real estate project, each other project and of each Penson Company;

e    information concerning each Penson Company's business plans, purchasing techniques, supplier lists and supplier information, transactions, acquisitions, syndications and other investments;

f    information submitted by each Penson Company's investors, brokers, service providers, consultants, employees, partners, lenders suppliers, , consultants or co-venturers with each Penson Company; and;

g.    all proprietary or trade secret information that is commercially valuable to each Penson Company and not generally known to the public.

Confidential Information shall not, however, include information that is or becomes widely known outside the Penson Companies through no act or failure to act by a Penson Company or other than as a result of the breach of any duty owed to any Penson Company.

2.    Duty of Confidentiality.  Employee agrees, both during and after his employment by Employer, to hold all Confidential Information in a fiduciary capacity for the benefit of the Penson Companies and to safeguard such Confidential Information. Employee also agrees that he will not, directly or indirectly, use, copy or disclose such Confidential Information except as may be authorized by a Penson Company within the proper scope of his assigned duties to any Penson Company.

The rights set forth herein are in addition to all rights each Penson Company may have under the common law or applicable statutory laws relating to the protection of trade secrets.  Employee agrees not to disclose to others, copy or use any trade secrets of any Penson Company that Employee acquired or originated during his employment with Employer for so long as such information remains entitled to trade secret protection under applicable statutory or common law.

3.    Third Party Information.  Employee acknowledges that, as a result of his employment by Employer, Employee may have access to, or knowledge of, confidential business information or trade secrets of third parties, such as investors, brokers, service providers, suppliers, consultants, employees, partners, lenders, joint venturers and the like of any Penson Company and the relevant contacts with respect to each of the foregoing. Employee agrees to preserve and protect the confidentiality of such third-party confidential information and trade secrets to the same extent, and on the same basis, as the Confidential Information.

4.    Confidentiality Survives Employment.  Employee understands that his obligations to maintain the confidentiality and security the Confidential Information of the Penson Companies and the confidential information of third parties remains with him even after his employment with Employer ends and continues for so long as such materials remain confidential (i.e. not widely known to the public).

5.    Conflict of Interest.  During Employee's employment with Employer, Employee will not engage in any business activity competitive with any Penson Company's business activities.  Nor will Employee engage in any other activities that conflict with any Penson Company's best interests.

6.    Works Made for Hire and Assignment.

(a)    All inventions, discoveries, computer hardware and software, algorithms, improvements and devices relating thereto and other information, know-how or works conceived, developed, prepared, made, created or furnished by Employee, or to which Employee contributes, alone or with others, in whole or in part, during his employment with Employer, which are useful in, or directly or indirectly related to any Penson Company's current or future business or which relate to, or are conceived, developed or made in the course of, Employee's employment with Employer or which are developed or made from, or by reason of knowledge gained from, such employment (hereinafter "Inventions"), together with any graphic designs, narrative works, business plans, lab notes, designs specifications, source code, object code, flow charts and other information in tangible form relating to such Inventions or otherwise to the any Penson Company's business (the "Works of Authorship" and collectively with the Inventions, the "Works") shall be the sole property of Employer and that the same shall constitute "works made for hire" (as that term is defined in United States Copyrights Act) by Employee. Accordingly, all present and future right, title and interest in and to all such works throughout the world, in any and all media now known or hereafter developed, including, but not limited to, all copyrights (and all renewals and extensions thereof), shall vest in and belong solely to Employer.

If any of the Works described in this Paragraph 6 or any of Employee's contribution(s) thereto shall not, for any reason, at any time, qualify as "works made for hire," Employee hereby irrevocably grants, transfers, assigns and conveys to Employer, all of Employee's present and future right, title, interest, ownership and all subsidiary rights in and to all such Works, throughout the world, in any and all media now known or hereafter developed, including, but not limited to, all copyrights, trademarks, patents and other intellectual and industrial property rights covering or embodied by such Works (and all renewals and extensions thereof) along with all causes of action, including, but not limited to, those for infringement, known or unknown, which have accrued or will accrue, from the conception or creation of each such Work.

(b)    Employee hereby agrees to disclose promptly and in writing to Employer all Works to which Employer is or may arguably be entitled as provided above, and agrees not to disclose such Works to others, except as required in accordance with

Employee's duties as an employee of Employer, without the express prior written consent of Employer.

(c)    Employee hereby further agrees that during Employee's employment with Employer and at any time thereafter, Employee shall execute and deliver to Employer any written documents and perform any other lawful act necessary to effectuate the assignment to Employer of any and all rights in such Works to which Employer is entitled as provided above.

7.    Return of Penson Company Documents.  Employee acknowledges that all documents created or received by him in connection with his employment belong to Employer (or a Penson Company), and not to Employee personally.  Such documents include files, memoranda, correspondence, reports, client records and compilations of information (however such information may be recorded and whether on hard copy or on a computer or magnetic disk) and other materials or property of any Penson Company including, without limitation, those containing any of any of the Penson Company's Confidential Information ("Company Documents").  Upon termination of Employee's employment with Employer for any reason whatsoever, or, if earlier, at the request of Employer, Employee will promptly deliver to Employer all originals and copies of all Company Documents.  Employee will also return to Employer all equipment, files, software programs and other property belonging to any Penson Company.  Employee will not reproduce or appropriate for his own use, or for the use of others, any property of any Penson Company.  Employee also agrees that Employee shall not, without specific written authorization of the relevant Penson Company, disclose Company Documents or any information contained in Company Documents to anyone outside the Penson Companies or use Company Documents for any purpose other than the advancement of the Penson Companies' interests.

8.    Post-Employment Non-Competition Agreement.  Employee understands that during his employment with Employer Employee will become familiar with Confidential Information of each of the Penson Companies and that the services Employee provides to the Penson Companies are unique and valuable.  Therefore, Employee would gravely harm the Penson Companies if he were to compete with the Penson Companies by working for his benefit, or the benefit of any third parties, on any transaction in which the Penson Companies might be interested or which the Penson Companies are in the process of reviewing.  Accordingly, Employee agrees, for three (3) months following the termination of his employment with Employer for any reason (the "Restricted Period") not to engage, for his benefit or the benefit of any third parties, directly or indirectly, as an employee, owner, partner, consultant or in any other capacity, in any activities concerning any transaction in which the Penson Companies were interested or in the process of evaluating or on which Employee worked or had knowledge of within the twelve (12) months immediately preceding the termination of Employee's employment with Employer.

Employee acknowledges and agrees that such activities of the Penson Companies referred to in the preceding paragraph are conducted in New York and Connecticut,

Accordingly, Employee agrees that the restrictions on his post-employment activity set forth above in this Paragraph 10 shall apply in New York and Connecticut.

9.    Non-Solicitation.    Employee agrees that during his employment with Employer and thereafter during the Restricted Period, he will not (whether on his behalf or on behalf of some other person or entity) solicit a business relationship with any actual or prospective investors, brokers, service providers, suppliers, consultants, partners, lenders by utlizing the relevant contacts of the Penson Companies with respect to each of the foregoing, regardless of whether or not he personally interacted with such relevant contacts during the course of his employment with Employer. Employee also agrees that during the Restricted Period he will not encourage or assist any person or entity in competition with any Penson Company to solicit any persons or entities covered by this Paragraph, or otherwise seek to encourage or induce any such persons or entities to cease doing business with, or lessen its business with, any Penson Company or otherwise interfere in any manner with any Penson Company's business relationship with such persons or entities. Employee further agrees that during his employment with Employer and thereafter during the Restricted Period, he will not (whether on his behalf or on behalf of some other person or entity) seek to divert any business opportunity from any Penson Company.

10.    No Raiding.    Employee also agrees that during his employment with Employer and thereafter during the Restricted Period he will not hire or seek to hire (whether on his behalf or on behalf of some other person or entity) any person who is at that time an employee, consultant or vendor of any of the Penson Companies, or who had left any Penson Company's employ or terminated its consulting or business relationship with any Penson Company in each case within three months prior thereto. Nor will Employee during his employment with Employer and thereafter during the Restricted Period, directly or indirectly, encourage or induce any employee of any Penson Company to leave the Penson Company's employ or otherwise interfere in any manner with the Penson Company's relationship with such employee, consultant or vendor.

11.    Other Agreements.    Neither Employee's duties as an employee of Employer nor Employee's performance of this Agreement will breach any other agreement to which Employee is a party, including, without limitation, any agreement limiting the use or disclosure of any information acquired by Employee prior to his employment by Employer. Employee has not entered into, and agrees that he will not enter into, any agreement, either oral or written, in conflict herewith. In the course of performing his work for any Penson Company, Employee shall not disclose or make use of any information, documents or materials which Employee is under an obligation to any other party to maintain in confidence.

12.    Tolling and Indemnification.    In the event that Employee violates any provision of Paragraphs 8, 9 or 10 of this Agreement, the restrictions set forth in Paragraphs 8, 9 and/or 10 of this Agreement shall be extended for three (3) months from the date of his last violation. Employee also agrees to indemnify, defend, and hold each Penson Company, its employees, officers, directors, agents, and representatives (including, without limitation, other employees of any Penson Company) harmless from and against

any and all losses, costs, expenses and fees suffered by any such person as a result of any violation by Employee of this Agreement, and to pay the relevant Penson Company's reasonable attorney's fees and other legal costs and expenses incurred to enforce this Agreement.

13.     No Other Consideration.  Employee agrees not to take any action the purpose of which is to evade the provisions of this Agreement.  Employee further agrees that, except as compensated in accordance with Employee's status as an employee of Employer (including, without limitation, under Employee's employment agreement with Employer dated the date hereof), Employee shall not be entitled to any further or additional compensation in consideration of his obligations under this Agreement, including, without limitation, (i) the assignment by Employee of Employee's rights in any Works as provided for in Paragraph 6, (ii) complying with the confidentiality obligations set forth above in Paragraphs 1, 2, 3 and 4, (iii) the provision of any services as provided for above in this Paragraph 6 and the post-employment obligations set forth in Paragraphs 8, 9 and 10 ; provided, however, that Employee shall be reimbursed for actual out-of-pocket expenses incurred in rendering to Employer the services specified in Paragraph 6(c).

14.     Governing Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York (without regard to its conflicts or choice of law provisions).

15.     Forum Selection.  The parties hereto consent to the exclusive jurisdiction of any state or federal court located within the County of New York, New York and irrevocably agree that any dispute between Employee and Employer (or any other Penson Company) arising out of any matter relating to this Agreement or breach thereof, or Employee's employment by Employer, shall be adjudicated in such courts, and each of the parties waives any objections it may have based upon improper venue or forum non conveniens to the conduct of any proceeding in such court.

16.     Severability and Construction.  If any provision or words contained in this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall be unaffected and shall remain valid, binding and effective and the scope of the unenforceable or invalid provision shall for purposes of such jurisdiction only be deemed reduced to the maximum extent enforceable. In the event that any provision or words contained in this Agreement are found by any court of competent jurisdiction to be ambiguous, the Agreement shall be deemed to have been drafted by all of the signatories and no ambiguity shall be construed against any of the signatories.

17.     Entire Agreement.  This Agreement constitutes the complete and entire agreement of the parties with respect to the subject matter of this Agreement and all prior negotiations and understandings relating to the subject matter of this Agreement, whether oral or written, are superseded and canceled by this Agreement. This Agreement cannot be modified or amended except in a writing signed by both parties. No oral or prior written

matter, extrinsic of this Agreement, shall have any force or effect. The waiver by any party to this Agreement of a breach of any provisions of this Agreement shall not operate or be considered as a waiver of any subsequent or simultaneous breach.

18.    Survival/Assignability.  This Agreement shall be binding upon the respective heirs, successors, and permitted assigns of the parties hereto.  Employee shall be free to assign its rights hereunder to any other party without the consent of Employee.

19.    Counterparts.  This Agreement may be executed and delivered in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute but one and the same instrument.

20.    Notification.  Employee specifically authorizes each Penson Company to contact Employee's future employers to determine Employee's compliance with this Agreement or to communicate the contents of this Agreement to such employers.

21.    Enforcement.  Employee acknowledges and agrees that the services to be provided by Employee are of a unique, unusual, special and extraordinary nature, and of peculiar value, the loss of which may not be reasonably or adequately compensated in damages in action at law.  Employee has carefully read and considered all provisions of this Agreement and agrees that (i) all of the restrictions set forth are fair and reasonably required to protect the each of the Penson Company's interests; (ii) the activities in which he may not engage during the Restricted Period do not unreasonably restrict his ability to earn a livelihood or impose any hardship; (iii) he has reviewed this Agreement with or without counsel's advice, as he chooses; (iv) he fully understands his obligations under this Agreement and (v) Employee's obligations under this Agreement are the essence of his employment and their inclusion herein is of material importance to Employer's decision to enter into this Agreement and Employee's Employment Agreement with Employer dated the date hereof.

The remainder of this page is intentionally left blank.

#378644                                   17

Employee further agrees that the Penson Companies will suffer irreparable harm in the event of any actual or threatened breach of this Agreement by Employee. Employee therefore consents and agrees that in the event of a breach or threatened breach of this Agreement by Employee the relevant Penson Company shall as a matter of right be entitled to the entry of any restraining order, preliminary injunction or other court order to enforce this Agreement and Employee expressly waives any requirement that a bond or other undertaking be made as a condition to such relief. Employee further agrees that any request for such relief by the relevant Penson Company shall be in addition and without prejudice to any other rights the relevant Penson Company may have at law or equity, including, without limitation, a claim for monetary damages which the relevant Penson Company might elect to assert.

By signing below, Employee acknowledges that he agrees to be bound by and comply with the terms set forth in this Agreement.

PENSON DEVELOPMENT, INC.

By: _____

___ Name: Edward I. Penson
___ Title: President

_____
_____ Date

ACCEPTED AND AGREED:

EMPLOYEE

_____
Name: Frank A. Farricker

_____
Date

<u>**Exhibit C**</u>

<u>**Applicable Restrictive Covenants**</u>

<u>**NONE**</u>