Jamie M. Brickell
Suyin So
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100
*Attorneys for Penson Development, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK FARRICKER, Plaintiff, v. PENSON DEVELOPMENT, INC., Defendant. | ECF Case<br>Civil Action No: 07-CV-11191 (DAB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PENSON DEVELOPMENT, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF RELEVANT FACTS .......... 3

The Employment Agreement .......... 3

Farricker's Employment with Penson .......... 5

ARGUMENT .......... 6

I. STANDARD ON MOTION .......... 6

II. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE THE AGREEMENT EXPIRED LONG BEFORE FARRICKER'S DEPARTURE .......... 7

A. The Agreement expired on August 1, 2005 and was not renewed .......... 7

B. Even if the Agreement had renewed from 2005-2006, Penson made it clear, by its actions, that it would not further renew the Agreement in 2007 .......... 9

III. FARRICKER WOULD NOT BE ENTITLED TO PARTICIPATION PAYMENTS EVEN IF HE HAD BEEN TERMINATED WITHOUT CAUSE .......... 10

IV. PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO STATE A CAUSE OF ACTION BECAUSE NY LABOR LAW § 193(1) DOES NOT APPLY TO HIM OR TO THE ALLEGED FAILURE TO MAKE PARTICIPATION PAYMENTS .......... 11

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Americas,
04 Civ. 10014 (PKL), 2005 U.S. Dist. LEXIS 16788 (S.D.N.Y. Aug. 12, 2005)...............6

Brown v. Sara Lee Corp.,
No. 98 Civ. 1593 (JSR), 1998 WL 809518 (S.D.N.Y. Nov. 19, 1998)..............................7

Davidson v. Regan Fund Management,
13 A.D.3d 117, 786 N.Y.S.2d 47 (1st Dep't 2004)........................................................11

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994)..............................................................................................6

Goldman v. White Plains Ctr. for Nursing Care, LLC,
43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't 2007), appeal docketed,
No. 1115, 105701/05 (2007)............................................................................................8

Goodman Mfg. Co. v. Raytheon Co.,
No. 98 Civ. 2774 (LAP), 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999)...................6, 7, 11

Insinga v. Cooperatiev Centrale Raiffeisen Borenleenbank B.A.,
03 Civ. 7775 (RJH), 2005 U.S. Dist. LEXIS 21104 (S.D.N.Y. Sept. 26, 2005).............7, 9

International Audiotext Network, Inc. v. American Telegraph & Telegraph Co.,
62 F.3d 69 (2d Cir. 1995)...........................................................................................6, 11

K. Bell & Associates, Inc. v. Lloyd's Underwriters,
97 F.3d 632 (2d Cir. 1996)..............................................................................................6

Leeds v. Meltz,
85 F.3d 51 (2d Cir. 1996)................................................................................................7

Lobosco v. New York Telegraph Co.,
96 N.Y.2d 312, 727 N.Y.S. 383 (2001)..........................................................................8

Log on Am., Inc. v. Promethean Asset Mgmt. LLC,
223 F. Supp. 2d 435, 439 (S.D.N.Y. 2001).............................................................6, 11

Mele v. Federal Reserve Bank,
359 F.3d 251 (3d Cir. 2004)............................................................................................7

Monagle v. Scholastic,
06 Civ. 14342 (GEL), 2007 U.S. Dist. LEXIS 19788 (S.D.N.Y. Mar. 9, 2007).........11, 12

**CASES** **PAGE(s)**

Readco, Inc. v. Marine Midland Bank,
81 F.3d 295 (2d Cir. 1996)....6

Rice v. Scudder Kemper Invs., Inc.,
01 Civ. 7078 (RLC), 2003 U.S. Dist. LEXIS 14239 (S.D.N.Y. Aug. 13, 2003)....11

**STATUTES**

Fed. R. Civ. P. 12 (b)(6)....1, 6

N.Y. Lab. Law § 193 (McKinney 2002)....12
§ 193 (1)....12
§ 198(c)(3) ....11, 12
§ 198(c)....11

Defendant Penson Development, Inc. ("Penson") respectfully submits this memorandum of law in support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint ("Amended Complaint") filed by Plaintiff Frank Farricker ("Farricker"). For the reasons set forth herein and in the accompanying February 29, 2008 affirmation of Jamie M. Brickell ("Brickell Affirmation"), the motion should be granted and the Amended Complaint dismissed in its entirety.

## PRELIMINARY STATEMENT

Farricker began working for Penson in August 2004 as its director of acquisitions, and he did so pursuant to a written employment agreement (the "Agreement"). The Agreement, Exhibit A to the Brickell Affirmation, expressly provided for a one-year term. Penson (not Farricker) had the option to renew the Agreement for an additional year; however, the Agreement also expressly provided that this option could only be exercised in writing. Indeed, the Agreement itself, by its terms, could not be modified orally. As is clear from the Amended Complaint, Exhibit B to the Brickell Affirmation, Farricker does not (and cannot) allege that the any option was ever exercised in writing, or that the Agreement was ever amended in writing.

The essence of Farricker's claim is that he continued working for Penson after the one year term of the Agreement expired, that he was terminated at some point, that the termination was somehow "wrongful" and that this therefore entitled him to receive a percentage of profits that were not paid to him during the actual term of the Agreement. In the event that any portion of the Amended Complaint survives this motion – which it should not – the evidence will demonstrate that these factual allegations are wholly without merit. However, this Court need never address any purported factual issues because, as is clear from the discussion below, if Farricker continued providing services to Penson after the expiration of the Agreement, he did so

as an at-will employee. Accordingly, he could not have been "wrongfully" terminated. Perhaps more compelling, though, even if he had been terminated "without cause," as he alleges, he still would not be entitled to any profit participation under the terms of the Agreement.

Recognizing that his contract claims cannot survive in the face of the foregoing, Farricker mischaracterizes the terms of the Agreement in the Amended Complaint. Specifically, even though it was a one-way option (for a single year) belonging to Penson, the Amended Complaint alleges that the Agreement was automatically renewable from year to year, that it was renewable by Farricker, and that it remained in effect as of 2007, when he left Penson. As will be shown, Farricker cannot avoid dismissal simply by contradicting the plain and unambiguous language of the Agreement that he himself attached to his Amended Complaint.

Looking more specifically at his claim, the Agreement provided that Farricker would receive a base salary plus a percentage of profits generated directly from "Deals" (a term having a specific definition in the Agreement) which he initiated and which were consummated during his employment under the Agreement. It further provided that Farricker would receive certain additional compensation if he were to be terminated without cause, but he would only be entitled to such profit participation after termination if his "without cause" termination were precipitated by his own death or disability. By this motion, therefore, and to the extent that the entire Amended Complaint is not dismissed based solely on a finding that the Agreement terminated after a single year, Penson also seeks dismissal of the Amended Complaint, in the alternative, based on Farricker's failure to allege that any of the business deals for which he seeks compensation fit within the Agreement definition of compensable "Deals" and upon his failure to demonstrate any interpretation pursuant to which he would be entitled to profit participation after his termination.

Finally, Farricker mischaracterizes this purported "failure" to pay him as an improper withholding or deduction pursuant to a state statutory scheme which does not apply to him. In short, Farricker's error-riddled Amended Complaint should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

### The Employment Agreement

Penson is a company with affiliates (individually, a "Penson Company;" collectively, "Penson Companies") engaged in the business of real estate development. Brickell Aff. Exh. B at ¶4. In 2004, Penson hired Farricker as Director of Acquisitions pursuant to the Agreement, made effective August 1, 2004. Brickell Aff. Exh. A. The Agreement states in part:

> **Commencing on the Effective Date**, [Farricker] shall, subject to the direction and supervision of the President of Employer, have the following duties: (a) **identifying potential Real Estate Projects** for (i) investment by or for the account of a Penson Company or (ii) investment by or resale to others of either the Real Estate Project or the contract pursuant to which a Penson Company acquired the rights to acquire the Real Estate Project, **(each such transaction a "Deal"** and collectively, the "Deals") . . .
> (emphasis added; underline in the original). Brickell Aff. Exh. A at § 1.1.1.

The Agreement also contained a clause entitled "Exclusive Full-Time Position" which provided that Farricker was to "devote his best efforts and all of his business time, attention and skills to the business and affairs of the Penson Companies" with certain exceptions for Farricker's service on civic, professional or charitable boards or committees and his management of his personal investments. Id. at § 1.2. A list of the current Real Estate Projects in which Farricker was involved was annexed to the Agreement. Id.

Farricker's compensation, under the Agreement, took the form of an annual base salary of $72,000 ("Base Salary") and participation payments equal to fifteen percent (15%) of Penson's cash distributions for certain transactions ("Participation Payments"). The conditions for Farricker's eligibility for Participation Payments were set forth at Section 2.2, which states:

> Executive shall be entitled to the following amounts . . . **for each Deal consummated by a Penson Company during Executive's employment hereunder**:

Brickell Aff. Exh. A at § 2.2 (emphasis added).

Thus, under the Agreement, Farricker was eligible to receive Participation Payments for Deals involving Real Estate Projects which met the following conditions:

- The Real Estate Project was identified by Farricker after August 1, 2004;
- A Penson Company invested in, or resold to others, the Real Estate Project;
- A Penson Company consummated—and received a cash distribution for—the transaction involving the Real Estate Project during Farricker's employment; and
- The Deal was consummated during the term of the Agreement. Id.

The Agreement provided for a one-year term, plus an option, at Penson's sole election, to renew for an additional year. Brickell Aff. Exh. A at § 2.5. Such renewal was subject to written notice of Penson's exercise of its option. Id.

Section 3 of the Agreement addressed the severance payments owed to Farricker, if any, in the event of the termination of his employment with Penson. Id. at §3. The Agreement provided that if Farricker were terminated for cause, he would forfeit and not receive any further payments in respect to any rights to Participation Payments. Id. at § 3.2.1.

Under §3.2.2, the Agreement provided that if Farricker were terminated without cause due to death or disability, he would receive the fair market value of his rights to any current Participation Payments. Id. If Penson terminated Farricker without cause for any other reason, Farricker's severance payment would be limited to his Base Salary for the remainder, if any, of the Employment Term, plus any accrued but unused vacation time and accrued benefits under Penson's benefit plan. Brickell Aff. at Exh. A at § 3.2.2.

Additionally, the Agreement provided that the parties could modify or amend the Agreement only by their joint execution of a written instrument, that the Agreement was the parties' entire agreement and that neither party would be bound by or liable for any alleged representation, promise or inducement not so set forth therein and that the parties' respective rights and obligations survived any "termination or expiration" of the Agreement's term. Brickell Aff. Exh. A at §§ 6.4, 6.5, 6.10.

**Farricker's Employment with Penson**

In his Amended Complaint, Farricker alleges that he worked for Penson through August 2007. Brickell Aff. Exh. A at ¶ 15. During this time, Farricker alleges that Penson made various oral statements to him regarding his right to Participation Payments and his employment status with Penson. Id. at ¶ 16-17. Farricker also alleges that, during the course of his employment, Penson consummated "several" Deals which were eligible for Participation Payments and identifies one such example as the sale of a property named Mohegan Apartments. Id. at ¶ 20.

The Amended Complaint further alleges that Penson terminated Farricker in August 2007 after learning that Farricker intended to run for a second time for elected office in Greenwich, Connecticut. Id. at ¶¶ 23-27. Farricker had campaigned, unsuccessfully, for public office in 2006 and was allegedly advised that he would not be permitted to return to Penson if his second bid were unsuccessful. Id. ¶ 23. Significantly, nowhere does the Amended Complaint allege that the Agreement was renewed or amended in writing. Similarly, the Amended Complaint does not indicate the basis upon which Farricker claims that he would be entitled to profit participation payments after he was supposedly terminated "without cause," nor does it at any point set forth the terms of any of his supposed "oral agreements" with Penson.

## ARGUMENT

### I. STANDARD ON MOTION

On a motion to dismiss pursuant to 12(b)(6), this Court must accept all pleaded facts as true and construe them in a light most favorable to the Plaintiff. While the Court may accept well-pleaded allegations as true, it should not accept unsupported or unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771-72 (2d Cir. 1994). New York law is clear that "the initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (citations and quotations omitted); Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996); Log on Am., Inc. v. Promethean Asset Mgmt. LLC, 223 F. Supp. 2d 435, 439 (S.D.N.Y. 2001). Nor does plain language in a contract become ambiguous simply because the parties to a litigation urge different interpretations. Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Americas, 04 Civ. 10014 (PKL), 2005 U.S. Dist. LEXIS 16788, at *14 (S.D.N.Y. Aug. 12, 2005), quoting Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990).

In evaluating whether Plaintiff has pleaded facts entitling him to relief, this Court must evaluate the Agreement, which is annexed to and made part of the Amended Complaint. International Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). "In so doing, [the Court is] not constrained to accept the allegations of the complaint in respect of the construction of the Agreement." Id. Indeed, "[i]f the content of the Agreement submitted . . . conflicts with allegations about that agreement made in the Complaint, the actual language of the Agreement controls." Goodman Mfg. Co. v. Raytheon Co., No. 98 Civ. 2774 (LAP), 1999 WL 681382, at *4 (S.D.N.Y. Aug. 31, 1999), citing, inter alia, International

Audiotext Network, Inc., 62 F.3d at 72. Additionally, "[a] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Mele v. Federal Reserve Bank, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (affirming dismissal of terminated worker's complaint against former employer in which documents, including employment handbook, expressly allowed for termination at will and contradicted plaintiff's claim of breach of contract) (citations and quotations omitted).

Because Farricker has not pleaded facts which, even if proven, would state legally sufficient claims, the Amended Complaint must be dismissed. See Brown v. Sara Lee Corp., No. 98 Civ. 1593 (JSR), 1998 WL 809518 (S.D.N.Y. Nov. 19, 1998) (Rakoff, J.). Plaintiff cannot withstand dismissal simply by relying upon conclusory allegations. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (liberal notice pleading requirements require more than slapping a label on the defendant and importuning the court to accept it as true for purposes of a motion to dismiss).

## II. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE THE AGREEMENT EXPIRED LONG BEFORE FARRICKER'S DEPARTURE

### A. The Agreement expired on August 1, 2005 and was not renewed

Plaintiff's breach of contract claim must be dismissed for the simple fact that the Agreement expired on July 31, 2005 and was accordingly not in place at the time of Plaintiff's departure from Penson in August 2007. To establish a breach of contract claim under New York law, a plaintiff must show a contract, performance by one party, breach by the other party and damages. Insinga v. Cooperatiev Centrale Raiffeisen Borenleenbank B.A., 03 Civ. 7775 (RJH), 2005 U.S. Dist. LEXIS 21104 (S.D.N.Y. Sept. 26, 2005), citing First Investors Corp. v. Liberty Mutual Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998). Farricker's breach of contract claim revolves around his allegation that he was terminated without cause in violation of the Agreement, which was in place at the time of his alleged termination. Because the Agreement expired in 2005,

however, Farricker was an at-will employee at the time of his departure and cannot sustain this claim. See Lobosco v. New York Tel. Co., 96 N.Y.2d 312, 727 N.Y.S. 383 (2001) (dismissing complaint for failure to state cause of action and stating that New York's presumption of at-will employment terminable by either party at any time without cause or notice applies in the absence of definite or specified term of employment).

Contrary to the Complaint's assertion that the Agreement and its terms and conditions automatically renewed each year, the Agreement explicitly provided for a one-year renewal, in writing, at Penson's sole election. Brickell Aff. Exh. A at § 2.5. Where the terms of an employment agreement are clear and unambiguous, its plain meaning should be enforced without regard to consideration of extrinsic evidence of the parties' understanding or intent. Goldman v. White Plains Ctr. for Nursing Care, LLC, 43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't 2007), appeal docketed, No. 1115, 105701/05 (2007) (dismissing claim for breach of employment contract which had expired by its own terms at the time of termination) (internal citations omitted).

In Goldman, the plaintiff served as an executive director for a nursing home for fourteen years pursuant to an employment agreement with a two-year term starting in 1990. Id. The parties never renewed the Agreement, and in 2004, the employer's successor-in-interest terminated plaintiff. Reversing the trial court's findings, the First Department found that in the absence of the Goldman parties' renewal of the contract pursuant to its explicit terms, the employment agreement had expired by its own terms in 1992, rendering plaintiff an employee at-will after that point. Id. A contrary result, the Court reasoned, would render meaningless the contract's distinction between termination and expiration. Id. Accordingly, the Court dismissed the breach of contract claim. Id. Here, Plaintiff concedes that the Agreement expired on July 31,

2005 and does not claim that Penson exercised its option to renew the Agreement by notifying Farricker in writing. Brickell Aff. Exh. B at ¶15. The Agreement thus did not by its terms renew automatically from year to year as Plaintiff alleges in the Complaint. Id. at ¶ 16. Furthermore, any alleged oral modification or renewal would be barred by the Agreement's requirement that any amendment be embodied in a written instrument executed by both parties. Brickell Aff. Exh. B at §6.4. Because the Agreement was no longer in effect after July 31, 2005, Plaintiff's breach of contract claim – to the extent it is based on the fiction that Farricker was wrongfully terminated in 2007 – cannot survive and must be dismissed.

**B. Even if the Agreement had renewed from 2005-2006, Penson made it clear, by its actions, that it would not further renew the Agreement in 2007**

Even if the Agreement were deemed to have renewed automatically, according to the Amended Complaint , Penson made it clear to Farricker that his employment would not continue. Brickell Aff. Exh B at ¶ 26. While (under certain circumstances) the continuance of employment may support a presumption of renewal of the Employment Agreement in one year increments, this presumption may be rebutted by facts showing that the parties intended otherwise. Insinga, 2005 U.S. Dist. LEXIS 21104. Where, as here, the Amended Complaint expressly recites that Penson was not interested in continuing Farricker's employment in any manner as of August 1, 2007, all claims premised on Farricker's purported wrongful termination must be dismissed. Id.

In this regard, the Amended Complaint itself recites that Farricker first ran for elected public office in Connecticut in the Fall of 2006, and that after he lost, he informed Penson in May 2007 of his intention to run for office again. Id. at ¶¶ 23-24. This admission runs directly contrary to the plain language of the Agreement, which recites that Farricker was to engage in an exclusive full-time position and barred him from participating in any activities, even civic or community-related activities, "to the extent such activities prevent [him] from devoting

substantially all of his business time to the Penson Companies." Brickell Aff. Exh. A at § 1.2 Significantly, the Amended Complaint also expressly acknowledges that Farricker was told by Penson's general counsel "that Penson would not permit him to return to his job if he lost the fall election." Brickell Aff. Exh. B at ¶ 25. Thus, Farricker admittedly knew, well before August 2007, that the Agreement, to the extent that it remained in force and effect, would not be renewed again as of August 2007. Under these circumstances, there can be no formulation under which this Court could conclude that he had been "wrongfully terminated" at that time.

Indeed, given the significant time demands a mayoral position would entail, Farricker's second run for office could not possibly be interpreted as an intent to devote himself full-time to Penson's business affairs. Thus, even if the Agreement had renewed from July 31, 2005 to July 31, 2006, Farricker's pursuit of separate full time employment in 2006 and 2007 forestalls any presumption of automatic renewal. Accordingly, Farricker's breach of contract claim, together with the second claim for declaratory relief which is premised on the same flawed contract claim, fails for the mere reason that there was no agreement in place between the parties.

## III. FARRICKER WOULD NOT BE ENTITLED TO PARTICIPATION PAYMENTS EVEN IF HE HAD BEEN TERMINATED WITHOUT CAUSE

Whether this Court concludes that the Agreement expired at the end of one year, or that it continued until August 2007, the Agreement nevertheless bars Farricker from receiving post-employment Participation Payments. Under § 3.2 of the Agreement, "Certain Obligations of Employer Following Termination of Executive's Employment," Penson was not obligated to pay Farricker Participation Payments after his termination unless Farricker's termination were due to his own death or disability. Brickell Aff. Exh. A at § 3.2. For any other termination without cause, Farricker was entitled to a continuation of his Base Salary, but not to Participation

Payments. Brickell Aff. Exh. A at § 3.2.2. Thus, it is irrelevant whether or not Farricker was, as the Amended Complaint alleges, terminated "without cause." Brickell Aff. Exh. B at ¶ 28.

Here, where the actual language of the Agreement conflicts with Plaintiff's self-serving allegations, the Agreement controls this Court's interpretation. Goodman Mfg. Co., 1999 WL 681382, at *4, citing, inter alia, International Audiotext Network, Inc., 62 F.3d at 72; see also Log on Am., Inc., 223 F. Supp. 2d at 439 (dismissal proper where clear language of contract belies breach of contract claim). Accordingly, the Court should reject Farricker's attempt to wholly revise the terms of the Agreement and dismiss the first and second claims.

## IV. PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO STATE A CAUSE OF ACTION BECAUSE NY LABOR LAW § 193(1) DOES NOT APPLY TO HIM OR TO THE ALLEGED FAILURE TO MAKE PARTICIPATION PAYMENTS

Because Plaintiff cannot state a cause of action cognizable under any applicable provision of New York's Labor Law, the Amended Complaint's third cause of action must also be dismissed. Under §3.3 of the Agreement, "Nature of Payments," any post-termination Base Salary or Participation Payments were to be considered severance payments. Brickell Aff. Exh. A at § 3.3. Critically, Farricker is categorically excluded from protection of the statutory provision which directly addresses severance payments. Labor Law § 198(c), which prohibits an employer from failing to pay "benefits or wage supplements," including severance, precludes relief for "any person in a bona fide executive, administrative or professional capacity…" with earnings exceeding $600 per week. N.Y. Lab. Law § 198(c)(3) (McKinney 2002); Monagle v. Scholastic, 06 Civ. 14342 (GEL), 2007 U.S. Dist. LEXIS 19788 (S.D.N.Y. Mar. 9, 2007), (granting defendant employer's motion to dismiss for failure to state a claim where plaintiff executive sought relief under Labor Law for alleged failure to pay severance payment). Thus, relief under §198(c) is precluded because Farricker was an executive whose starting base salary

was $72,000 in $6,000 monthly installments[1] and whose title was Director of Acquisitions. Brickell Aff. Exh. A at § 2.1. See Rice v. Scudder Kemper Invs., Inc., 01 Civ. 7078 (RLC), 2003 U.S. Dist. LEXIS 14239, at *10 (S.D.N.Y. Aug. 13, 2003) (collecting cases holding that executives are exempt from the Labor Law); Davidson v. Regan Fund Mgmt., 13 A.D.3d 117, 786 N.Y.S.2d 47 (1st Dep't 2004) (same).

Farricker's effort to circumvent this bar by citing to Labor Law § 193(1) is equally fatal; that section prohibits an employer from making improper deductions or withholdings, but none is actually alleged in the Amended Complaint. Brickell Aff. Exh B at ¶¶ 38-40. Instead, Farricker has alleged a failure to pay wages or wage benefitsowed pursuant to the Agreement, a claim which Courts have routinely held is not appropriate for Labor Law § 193. Monagle, 2007 U.S. Dist. LEXIS 19788, S.D.N.Y. 2007, citing Miles A. Kletter, DMD v. Fleming, 32 A.D.3d 566, 820 N.Y.S.2d 348 (3d Dep't 2006) (dismissing claim under § 193(1) where dispute concerned failure to pay wages owed under contract, not deduction from wages within statutory meaning).

In Monagle, as here, an executive sued his former employer, a publishing company, for its failure to pay him an agreed-to severance payment upon his termination of employment. 2007 U.S. Dist. LEXIS 19788. The plaintiff sought relief, as Farricker does, pursuant to "Section 190 et seq." and § 193(1), in addition to other subsections of the Labor Law. Id. Finding that plaintiff was not entitled to relief under any of the Labor Law provisions cited, Judge Lynch noted §198(c)(3)'s explicit exclusion of executives from its protection. Id., citing Miteva v. Third Point Mgmt. Co., LLC, 323 F. Supp. 2d 573 (S.D.N.Y. 2004). The Court further observed that § 193 has "nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages." Id., citing Miles A.

[1] If this matter were to proceed for any purpose, the evidence would show that Farricker's compensation was actually increased to $9,000 per month by the beginning of 2006.

Kletter, 32 A.D.3d at 567, 820 N.Y.S.2d at 350. This analysis applies here, and Plaintiff's third cause of action seeking relief under the New York State Labor Law must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Defendant's motion to dismiss should be granted in its entirety and the Amended Complaint dismissed with prejudice, together with such other and further relief as this Court may deem fit.

Dated: New York, New York
February 29, 2008

Respectfully submitted,

PRYOR CASHMAN LLP

By: ________________________
Jamie M. Brickell
jbrickell@pryorcashman.com
Suyin So
sso@pryorcashman.com
410 Park Avenue
New York, New York 10020
(212) 421-4100

Attorneys for Defendant