UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FRANK A. FARRICKER,

                Plaintiff,

            - against -

PENSON DEVELOPMENT, INC.,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

07 Civ. 11191 (DAB)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

VLADECK, WALDMAN, ELIAS &
  ENGELHARD, P.C.
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

Of Counsel:
    Debra L. Raskin

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

    I.    STANDARD OF REVIEW ................................................................................. 6

    II.    PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT ................... 6

        A.    Plaintiff Sufficiently Alleges That Defendant Consummated
            Compensable Deals As Defined by the Written Agreement ..................... 7

        B.    Plaintiff States a Claim for Breach of Contract Even if the Written
            Agreement Expired After the Initial Term ................................................ 8

        C.    Plaintiff States a Claim for Breach of the Oral Contract ........................... 9

            1.    The Parties Were Free to Contract Orally ..................................... 10

            2.    Plaintiff Sufficiently Alleges the Terms of the Oral Promises ..... 11

    III.    PLAINTIFF IS ENTITLED TO RECEIVE PARTICIPATION PAYMENTS
        POST-TERMINATION ........................................................................................ 13

        A.    Plaintiff Is Not Barred From Recovering Participation Payments
            for Deals Completed During His Employment ........................................ 13

        B.    Plaintiff Is Entitled To Participation Payments For Deals Where
            Defendant Will Receive Payment After His Dismissal ........................... 16

        C.    In the Alternative, Plaintiff States a Claim for Fraudulent
            Inducement or Promissory Estoppel ....................................................... 18

    IV.    PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE LABOR
        LAW ................................................................................................................... 20

        A.    Plaintiff Does Not Assert a Claim Under Labor Law Section 198-c ........ 20

        B.    Plaintiff States a Claim Under Labor Law Section 193 ........................... 21

            1.    Plaintiff Is an Employee Within the Meaning of Labor Law
                 Section 193 ................................................................................... 21

            2.    Labor Law Section 193 Applies To All Wage Reductions ........... 23

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

Bell Atl. Corp. v. Twombly,
    27 S. Ct. 1955 (2007) ...................................................................................................6

Bones v. Prudential Fin., Inc.,
    17 Misc. 3d 656, 847 N.Y.S.2d 348 (Sup. Ct. N.Y. Co. Aug. 20, 2007) ...........................19

CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.,
    No. 03 Civ 7936 (DAB), 2006 WL 1379596 (S.D.N.Y. May 18, 2006)............................5

Canet v. Gooch Ware Travelstead,
    917 F. Supp. 969 (E.D.N.Y. 1996) ...........................................................................10, 12

Carlson v. Katonah Capital, L.L.C.,
    10 Misc. 3d 1076(A), 814 N.Y.S.2d 889 (Sup. Ct. N.Y. Co. Jan. 27, 2006) ....................24

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)........................................................................................6

Cohen v. Stephen Wise Free Synagogue,
    No. 95 Civ. 1659 (PKL), 1996 WL 159096 (S.D.N.Y. Apr. 4, 1996)..................22, 23, 24

Coritsidis v. Consumer Home Mortgage, Inc.,
    265 A.D.2d 521, 697 N.Y.S.2d 126 (2d Dep't 1999).........................................................18

Davidson v. Regan Fund Management,
    13 A.D.3d 117, 786 N.Y.S.2d 47 (1st Dep't 2004)........................................................22

Designers N. Carpet, Inc. v. Mohawk Indus., Inc.,
    153 F. Supp. 2d 193 (E.D.N.Y. 2001) .......................................................................8

Don King Prods., Inc. v. Douglas,
    742 F. Supp. 741 (S.D.N.Y. 1990) .............................................................................12

Erickson v. Pardus,
    127 S. Ct. 2197 (2007)..............................................................................................7

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
    375 F.3d 168 (2d Cir. 2004).........................................................................................6

Goldman v. White Plains Ctr. for Nursing Care, LLC,
    43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't), leave to appeal granted,
    9 N.Y. 3d 815, 848 N.Y.S.2d 26 (2007) ..................................................................9, 10

Goodman Manufacturing Co. L.P. v. Raytheon Co.,
        No. 98 Civ. 2774 (LAP), 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) ..........................15

Gottlieb v. Kenneth D. Laub & Co., Inc.,
        82 N.Y.2d 457, 605 N.Y.S.2d 213 (1993) ................................................................22, 23

In Design v. K-mart Apparel Corp.,
        No. 87 Civ. 8397 (KC), 1991 WL 84533 (S.D.N.Y. May 14, 1991)...............................11

Iqbal v. Hasty,
        490 F.3d 143 (2d Cir. 2007).........................................................................................6

Klepner v. Codata Corp.,
        139 Misc. 2d 382, 527 N.Y.S.2d 158 (Sup. Ct. N.Y. Co. 1988) .......................................23

Life Care Ambulance, Inc. v. Hospital Authority of Gwinnett County,
        202 Ga. App. 864, 415 S.E.2d 502 (Ct. App. 1992).........................................................11

Lobosco v. N.Y. Tel. Co.,
        96 N.Y.2d 312, 727 N.Y.S.2d 383 (2001) .......................................................................9

Log On America, Inc. v. Promethean Asset Management LLC,
        223 F. Supp. 2d 435 (S.D.N.Y. 2001)..............................................................................15

Miteva v. Third Point Mgmt. Co.,
        323 F. Supp. 2d 573 (S.D.N.Y. 2004).........................................................................22, 23

Monagle v. Scholastic,
        No. 06 Civ. 14342 (GEL), 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007) ..........................24

Morone v. Morone,
        50 N.Y.2d 481, 429 N.Y.S.2d 592 (1980) .......................................................................10

Nadherny v. Roseland Prop. Co., Inc.,
        390 F.3d 44 (1st Cir. 2004).............................................................................................17

Navigant Consulting, Inc. v. Kostakis,
        No. 07 Civ. 2302 (CPS)(JWA), 2007 WL 2907220 (E.D.N.Y. Oct. 4, 2007) .................19

Pachter v. Bernard Hodes Group, Inc.,
        9 N.Y.3d 971, 848 N.Y.S.2d 9 (2007) ............................................................................23

Pachter v. Bernard Hodes Group, Inc.,
        505 F.3d 129 (2d Cir. 2007)............................................................................................23

Peregrine Fixed Income Ltd. v. JP Morgan Chase Bank,
        No. 05 Civ. 4351 (RMB)(THK), 2006 WL 196967 (S.D.N.Y. Jan. 26, 2006) ...............17

Rice v. Scudder Kemper Investments, Inc.,
    No. 01 Civ. 7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003) .......................22

Rogers. v. Town of Islip,
    230 A.D.2d 727, 646 N.Y.S.2d 158 (2d Dep't 1996) ..........................................................19

Ronan Assocs. v. Local 94-94A-94B,
    24 F.3d 447 (2d Cir. 1994) .................................................................................................10, 12

Simas v. Merrill Corp.,
    No. 02 Civ. 4400 (RCC), 2004 WL 213013 (S.D.N.Y. Feb. 4, 2004) .............................21

Singer v. Jefferies & Co.,
    160 A.D.2d 216, 553 N.Y.S.2d 346 (1st Dep't 1990) ..................................................19, 20

Subaru Distribs. Corp. v. Subaru of Am., Inc.,
    No. 03 Civ. 9608 (SCR), 2004 WL 3220120 (S.D.N.Y. June 1, 2004) ......................15, 17

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ..............................................................................................................6

Tuttle v. Geo. McQuesten Co.,
    227 A.D.2d 754, 642 N.Y.S.2d 356 (3d Dep't 1996) ........................................................24

Wynn v. AC Rochester,
    273 F.3d 153 (2d Cir. 2001) ................................................................................................19

## STATUTES

28 U.S.C. § 2201 ...........................................................................................................................16

Fed. R. Civ. P. 8 ..............................................................................................................................8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................6

Fed. R. Civ. P. 15(a) ...................................................................................................................5, 13

New York Labor Law § 191 ..............................................................................................21, 22, 23

New York Labor Law § 192 ..................................................................................................21, 22

New York Labor Law § 193 ..............................................................................2, 20, 21, 22, 23, 24

New York Labor Law § 198-c .................................................................................................20, 21, 22

## MISCELLANEOUS

Richard A. Lord, Williston on Contracts, § 4:30 at 864, 873-74 (4th ed. 2001) ...........................12

PRELIMINARY STATEMENT

Plaintiff Frank Farricker ("plaintiff" or "Farricker") submits this memorandum in opposition to the motion to dismiss of his former employer, Penson Development, Inc. ("defendant" or "Penson Development"). As a threshold matter, defendant fundamentally misunderstands plaintiff's breach of contract claims. Defendant erroneously contends that Farricker's contract claims "revolve[] around his allegation that he was terminated without cause." (Defendant's Memorandum of Law ("Def. Mem.") 7) This is an incorrect characterization of Farricker's breach of contact claims. Plaintiff seeks compensation for work performed _during_ his employment, generally unrelated to his dismissal. As a result of defendant's confusion of the issue, many of its arguments are simply irrelevant.

Plaintiff's breach of contract claims are straightforward. Plaintiff and defendant entered into several agreements, both written and oral. Under those agreements, Penson Development promised to pay Farricker a percentage of its profits ("Participation Payments") for certain deals completed during his employment. In fact, during plaintiff's tenure, defendant consummated several deals that plaintiff initiated and it received substantial profits from those transactions. Defendant, however, never paid plaintiff his Participation Payments pursuant to the parties' written and oral agreements.

Defendant principally argues that dismissal of plaintiff's contract claims is appropriate because the parties' written contract expired after one year. (Def. Mem. 2, 7) Penson Development thus ignores plaintiff's allegations that he is entitled to Participation Payments for a deal completed _during_ the term of the written contract. Moreover, defendant fails to address plaintiff's allegation that the parties created a new oral agreement after the written contract expired.

Defendant also argues that, even if the written contract remained in effect

throughout plaintiff's tenure, dismissal is appropriate because the contract specified that plaintiff was not entitled to Participation Payments post-termination (except in limited circumstances not relevant here).  (Def. Mem. 10-11)  This contract provision defendant relies on, however, is inapplicable to the breach of contract claims because that provision concerned severance and ongoing deals, and not compensation for deals that defendant completed and received payment for during plaintiff's employment.

Additionally, Farricker requests a declaratory judgment that he is entitled to "current" Participation Payments post-termination – specifically, for deals that Penson Development completed, but had not received payment for when it fired plaintiff.  In contrast to plaintiff's breach of contract claims, the request for a declaratory judgment concerns Farricker's discharge and deals ongoing at the time that defendant fired him.  Even so, defendant's arguments are unavailing and dismissal is inappropriate.  At a minimum, the contract is ambiguous with respect to whether plaintiff retained post-termination his rights to "current" Participation Payments for deals where defendant was not yet paid.  Key to that determination is whether pursuant to the written and oral contracts, Penson Development fired plaintiff for cause, which, contrary to defendant's contention (Def. Mem. 9-10), is a factual issue.

Finally, Penson Development moves to dismiss plaintiff's Labor Law claims, but its arguments on this point also miss the mark.  Defendant contends that the Labor Law does not apply to what defendant characterizes as plaintiff's claims for "severance."  (Def. Mem. 11-12)  Farricker, however, does not seek damages under the Labor Law for Penson Development's failure to pay him severance.  Rather, plaintiff alleges defendant's failure to pay him compensation earned <u>during</u> his employment, a failure that violates the Labor Law § 193.

## STATEMENT OF FACTS

Plaintiff has worked in real estate since 1999.  (Amended Complaint ("Am.

Compl.") ¶ 7)  On August 1, 2004, plaintiff joined defendant as Director of Acquisitions.  (Am. Compl. ¶¶ 3, 8)  Penson Development is the development arm of the Penson Companies, a group of real estate entities in the business of acquiring, owning, operating, managing and selling residential and commercial real estate.  (Am. Compl. ¶ 8)

The Written Agreement

In August 2004, plaintiff and defendant entered into an employment agreement ("Written Agreement").  (Am. Compl., Exhibit A; Am. Compl. ¶ 9)  The Written Agreement provided that it would remain in effect for one year until July 31, 2005 ("Initial Term") (Am. Compl., Exhibit A § 2.5; Am. Compl. ¶ 10), and that defendant could renew the Agreement for an additional year by providing plaintiff with written notice (Am. Compl., Exhibit A § 2.5).

The Written Agreement described plaintiff's duties.  Section 1.1.1 specified that plaintiff was responsible for:

> (a) identifying potential Real Estate Projects for (i) investment by or for the account of a Penson Company or (ii) investment by or resale to others of either the Real Estate Project or the contract pursuant to which a Penson Company acquired the right to acquire the Real Estate Project, (each such transaction a "Deal" and collectively, the "Deals"); (b) researching and performing due diligence with respect to each such Deal, working on all aspects of such Deals, including, without limitation, seeking loan commitments from banks and other capital sources and (c) interfacing with legal counsel, banks and accountants with respect to such Deals in order to consummate such Deals. . . .

(Am. Compl., Exhibit A § 1.1.1)

The Written Agreement also stated that, in addition to a base salary, plaintiff was entitled to "Participation Payments" for Deals, as defined by Section 1.1.1, that defendant or any affiliate of defendant (a "Penson Company") consummated during Farricker's employment.  In particular, with respect to each Deal, Farricker was entitled to receive 15% of any cash distribution made or other amounts paid to defendant or any of its affiliates.  (Am. Compl., Exhibit A § 2.2; Am. Compl. ¶ 12)  The Written Agreement specified that, within 30 days of

receiving a cash distribution or other applicable revenue, defendant or the relevant Penson Company had to pay Farricker his Participation Payments. (Am. Compl., Exhibit A § 2.2; Am. Compl. ¶ 13)

In addition, the Written Agreement stated: "No term or provision of this [Written Agreement] may be may be modified, amended, waived or discharged in any manner except by a written instrument executed by [defendant and plaintiff]." (Am. Compl., Exhibit A § 6.4)

<u>Oral Agreement</u>

By its terms, the Written Agreement expired on July 31, 2005, but Farricker continued to work for Penson Development until August 2007. During this time, he worked in the same capacity and tendered the same services that he had rendered during the Initial Term of the Written Agreement. (Am. Compl. ¶ 15) By oral agreement, however, certain terms of his employment arrangement changed; for example, in 2006 Penson Development increased Farricker's base salary from monthly payments of $6,000 to $9,000.

On several occasions after July 31, 2005, Edward Penson ("Penson"), President of Penson Development, told plaintiff that the terms of his employment continued to include the right to Participation Payments as defined by the Written Agreement. (Am. Compl. ¶ 17) For example, in or around December 2005, plaintiff told Penson that he hoped to earn $200,000 in 2005. In response, Penson said he believed plaintiff would be receiving much more than $200,000 from the deals that were then pending. (<u>Id.</u>)

On or around January 12, 2006, defendant and/or a Penson Company closed on its acquisition of a property located at 130 Jackson Street in Brooklyn, New York. Penson told plaintiff, in the presence of others attending the closing, that plaintiff would be receiving his "15%." (Am. Compl. ¶ 18)

In the summer of 2006, when recruiting Melissa Barbera ("Barbera") to serve as defendant's General Counsel, Penson told Barbera that he and plaintiff had an "employment

agreement." Penson told Barbera that under the agreement, plaintiff was entitled to "profit participation." (Am. Compl. ¶ 19)

Compensable Deals

During the course of plaintiff's employment, defendant and/or its affiliates consummated several Deals. Farricker provided valuable services to defendant and its affiliates in connection with these Deals. (Am. Compl. ¶ 21) Plaintiff thereby fulfilled his obligations pursuant to the written and oral contracts with defendants. (Am. Compl. ¶ 29) Contrary to defendant's contention (see Def. Mem. 2, 3, 4), such activities constituted "identifying" the Deal.

One Deal at issue occurred in March 2005, during the Initial Term of the contract, when Mohegan Apartments Associates sold the Mohegan Apartments for approximately $17,100,000, with a net profit of about $6,699,084. The defendant or one of its affiliates had a 44% interest in Mohegan Apartments Associates, and Penson was general partner of the group. (Am. Compl. ¶ 20) Plaintiff helped initiate that transaction: he structured the sale, assisted and advised in all facets of negotiation, secured and supervised the appropriate sales broker, and attended the closing in place of Penson. (Am. Compl. ¶ 21)[1]

Following certain Deals consummated during plaintiff's employment, defendant and/or various Penson Companies received cash distributions and/or other applicable revenue. In violation of the written and oral contracts, plaintiff never received any Participation Payments. (Am. Compl. ¶ 22)

Defendant Fires Plaintiff

In the fall of 2006 while employed by Penson Development, Farricker ran for local elected office in Greenwich, Connecticut. After losing the election, plaintiff continued to

---

[1]    Although not specifically pleaded, plaintiff identified the buyer of the Mohegan Apartments. To the extent such an allegation is deemed necessary, plaintiff respectfully requests leave to replead. See Fed. R. Civ. P. 15(a) (leave to amend should be "freely" given "when justice so requires"); CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd., No. 03 Civ. 7936 (DAB), 2006 WL 1379596, at * 8 (S.D.N.Y. May 18, 2006).

work for defendant in the same capacity that he had before the election. (Am. Compl. ¶ 23)

However, after plaintiff told Penson that he intended to run for local office again in the fall of

2007, Barbera, then General Counsel, advised Farricker that Penson was terminating his

employment. (Am. Compl. ¶¶ 24-25) On August 3, 2007, Penson fired plaintiff, effective

immediately. (Am. Compl. ¶¶27-28)

ARGUMENT

## I.     STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must

accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the

plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A

complaint must "amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d

Cir. 2007).[2] Because plaintiff has satisfied this standard, defendant's motion to dismiss should be

denied.

## II.    PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract under New York law,[3] plaintiff need allege

only: (1) the existence of an agreement; (2) his performance of the contract; (3) defendant's

breach of contract; and (4) damages. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust

Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted).

---

[2]     In Iqbal, 490 F.3d at 155, the Court noted that "[c]onsiderable uncertainty concerning the
standard for assessing the adequacy of pleadings has recently been created by the Supreme
Court's decision in Bell Atl. Corp. v. Twombly, [127 S. Ct. 1955 (2007)]." Nevertheless, the
Second Circuit has adhered to the requirement that on a motion to dismiss, the factual allegations
of a complaint be accepted as true. Iqbal, 490 F.3d at 152; see Swierkiewicz v. Sorema N.A.,
534 U.S. 506, 508 n.1 (2002).

[3]     The Written Agreement specified that it is to be interpreted under New York law (Am.
Compl., Exhibit A § 6.6), and defendant relies on New York law (Def. Mem. 6, 7).

Plaintiff has alleged sufficient facts to state claims for breach of the Written Agreement and subsequent oral contract.

A.    Plaintiff Sufficiently Alleges That Defendant Consummated
      Compensable Deals As Defined by the Written Agreement

Defendant asserts, in conclusory fashion, that plaintiff "fail[s] to allege that any of the business deals for which he seeks compensation fit within the [Written Agreement's] definition of compensable Deals." (Def. Mem. 2)  Defendant does not articulate any basis for this argument.

In order for plaintiff to receive Participation Payments, the Written Agreement requires only that "for each Deal consummated by a Penson Company during [plaintiff's] employment" defendant must have received a cash distribution or other revenue in excess of its costs. (Am. Compl., Exhibit A § 2.2)  The Amended Complaint specifically alleges that "[d]uring the course of plaintiff's employment, defendant and/or its affiliates consummated several [Deals]"; that plaintiff "provided valuable services to defendant and various Penson Companies in connection with most of the [Deals] consummated during plaintiff's employment"; and that from these Deals "defendant and/or various Penson Companies received cash distributions and/or other applicable revenue." (Am. Comp. ¶¶ 20-22)  Furthermore, the Amended Complaint provides one example of a Deal, the sale of the Mohegan Apartments, that occurred during the Initial Term of the Written Agreement, from which defendant earned significant revenue. (Am. Compl. ¶¶ 20-21)

Plaintiff's allegations in this regard exceed the specificity requirements of federal notice pleading.  The complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"; "[s]pecific facts are not necessary." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citations omitted).  Here, plaintiff attaches the Written Agreement and specifically explains the provisions that defendant violated.

Cf. Designers N. Carpet, Inc. v. Mohawk Indus., Inc., 153 F. Supp. 2d 193, 197-98 (E.D.N.Y. 2001) (although plaintiff did not describe the contract or contracts at issue and did not allege whether the agreements were written or oral, when they were made, the length of time they covered, or any other terms, the court found that the complaint provided the short and plain statement that Fed. R. Civ. P. 8 requires).

Defendant implies that the Amended Complaint fails in this regard because plaintiff does not allege that he "identified" any Real Estate Projects as required pursuant to the definition of Deals.  (Def. Mem. 2, 3, 4)  Defendant cites (Def. Mem. 3) Section 1.1.1, which defined the term Deals:

> (a) identifying potential Real Estate Projects for (i) investment by or for the account of a Penson Company or (ii) investment by or resale to others of either the Real Estate Project or the contract pursuant to which a Penson Company acquired the right to acquire the Real Estate project, (each such transaction a "Deal" and collectively, the "Deals"). . . .

Although plaintiff does not expressly use the word "identify," the Amended Complaint alleges that, in connection with the Deals completed during his employment, plaintiff engaged in activities constituting identification.  In particular, with regard to the Mohegan Apartments Deal, the Amended Complaint alleges (Am. Compl. ¶ 21) that Farricker helped structure the sale, assisted and advised in all facets of negotiation, secured and supervised the appropriate sales broker, and attended the closing in place of Penson.  (See n.1, supra)

B.    Plaintiff States a Claim for Breach of Contract Even if
the Written Agreement Expired After the Initial Term

Defendant contends that the Court must dismiss plaintiff's breach of contract claim "for the simple fact" that the Written Agreement expired on July 31, 2005.  (Def. Mem. 7) However, even if the Written Agreement did expire on this date, plaintiff's contract claim should

survive because defendant breached the contract while the Written Agreement was undisputedly in effect.[4]

Plaintiff alleges that during the Initial Term of the Written Agreement, at least one Deal took place – in March 2005, one of defendant's affiliates, the Mohegan Apartment Associates, sold the Mohegan Apartments. (Am. Compl. ¶ 20) He further alleges that, during the Initial Term, he provided significant services in connection with this sale and defendant received substantial profits for the sale. (Am. Compl. ¶¶ 20-21) As the Amended Complaint states, however, defendant never paid plaintiff his Participation Payments in violation of the Written Agreement. (Am. Compl. ¶ 22)

Plaintiff alleges the existence of a contract, performance, defendant's breach, and damages, all occurring during the Initial Term of the Written Agreement. Accordingly, Farricker alleges sufficient facts to state a claim for breach of the Written Agreement.

C.    Plaintiff States a Claim for Breach of the Oral Contract

Defendant promised plaintiff on several occasions after July 31, 2005, that the terms of his employment continued to include the right to Participation Payments. (Am. Compl. ¶¶ 17-19) After the Initial Term, Penson Development completed several more Deals, which resulted in substantial profits for defendant. (See Am. Compl. ¶¶ 20, 22) Defendant, however, never paid plaintiff Participation Payments thereon. (Am. Compl. ¶ 22)[5]

---

[4]    Defendant's citation (Def. Mem. 8) to Lobosco v. N.Y. Tel. Co., 96 N.Y.2d 312, 727 N.Y.S.2d 383 (2001), is inapposite. Penson Development cites Lobosco for the proposition that Farricker was an at-will employee when defendant fired him, and therefore he cannot sustain a wrongful termination claim. (Def. Mem. 7-8) As discussed above, however, plaintiff does not allege breach of contract constituting wrongful termination; thus, Lobosco is inapplicable.

[5]    Although plaintiff does not address herein the allegation that his contract automatically renewed, as set forth in the Amended Complaint (Am. Compl. ¶¶ 15-16), plaintiff does not waive this claim. Defendant cites Goldman v. White Plains Ctr. for Nursing Care, LLC, 43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't 2007), in support of its argument that the Written Agreement, as a matter of law, could not automatically renew because of the contract's written renewal requirement. (Def. Mem. 8-9) The New York Court of Appeals, however, has granted the

Under New York law, oral agreements are enforceable as express contracts in the same manner as written contracts. See Ronan Assocs. v. Local 94-94A-94B, 24 F.3d 447, 449 (2d Cir. 1994) (applying New York law and finding enforceable oral contract); Morone v. Morone, 50 N.Y.2d 481, 487-88, 429 N.Y.S.2d 592, 595 (1980) (oral partnership contract held enforceable and outside the statute of frauds).[6]

1.    The Parties Were Free to Contract Orally

Defendant contends (Def. Mem. 9) that as a matter of law, the parties could not orally modify or renew the Written Agreement, and therefore plaintiff's claim of an oral contract is without merit.  Defendant is wrong.

Section 6.4 of the Written Agreement prohibited "modifi[cation], amend[ment], waive[r] or discharge[]" in any manner except by a written instrument."  (Am. Compl., Exhibit A § 6.4)  However, plaintiff does not allege contract renewal or extension based on defendant's oral promises.  Instead, plaintiff contends that the parties entered into a new oral agreement after the Written Agreement expired.  The terms of the expired contract no longer bound the parties.  Plaintiff and defendant were therefore free to form a new agreement, orally or in writing.

In fact, Penson Development suggests that the parties formed a new contract. Defendant states that in 2006 Penson Development raised plaintiff's salary from $6,000 per month to $9,000 per month.  (Def. Mem. 12 n.1)  Although the parties did not execute a written contract, they orally agreed that defendant would pay Farricker in a manner different from that

---

plaintiff in Goldman leave to appeal.  9 N.Y.3d 815, 848 N.Y.S.2d 26 (2007).  Pending the Court of Appeals' decision, plaintiff reserves the right to assert his claim that the Written Agreement automatically renewed because, after its expiration, plaintiff continued to work in the same capacity and tendered the same services as he did during the Initial Term of the contract.

[6]    As described below, the parties were capable of performing the oral agreement at issue within one year.  Therefore, the New York Statute of Frauds does not bar plaintiff's claims arising under the oral contract.  See Canet v. Gooch Ware Travelstead, 917 F. Supp. 969, 987-88 (E.D.N.Y. 1996) (statute of frauds not applicable where plaintiff was an employee at-will and defendant could complete compensable deals within one year).

specified in the Written Agreement. Thus, defendant describes the formation of a new oral agreement that demonstrates plaintiff's point: when the Written Agreement expired, the parties were free to contract anew and did; they adopted some terms from the Written Agreement (like Participation Payments) and not others (such as salary).

The limited case law on this issue supports plaintiff's claim. The court in <u>Life Care Ambulance, Inc. v. Hospital Authority of Gwinnett County</u>, 202 Ga. App. 864, 415 S.E.2d 502 (Ct. App. 1992), considered an employment contract that required a written notice for renewal. <u>Id.</u> at 865. The court held that the parties had established either an oral agreement to renew the written contract or an oral contract incorporating the terms of the previous written agreement. <u>Id.</u> at 866. The court found that the deposition testimony showed that the parties intended to renew the contract after the initial one year period, that they both considered themselves bound by the terms of the written contract, and that they continued to perform in accordance with the written contract; accordingly, the terms of the original agreement governed the parties' relationship beyond the contract's expiration. <u>Id.</u> at 865-66; <u>see</u> <u>In Design v. K-mart Apparel Corp.</u>, No. 87 Civ. 8397 (KC), 1991 WL 84533, at *14 (S.D.N.Y. May 14, 1991) (parties intended their agreement to continue in full force for an additional year based on an oral agreement, notwithstanding the absence of a timely written notice of intention to renew as the original written contract required).

Similarly, the Written Agreement did not preclude the parties here from orally agreeing to a new contract. Defendant's subsequent oral promises in exchange for Farricker's continuing work therefore are binding.

2.    <u>Plaintiff Sufficiently Alleges the Terms of the Oral Promises</u>

Defendant incorrectly asserts that plaintiff fails to "set forth the terms of any of his supposed 'oral agreements' with Penson." (Def. Mem. 5) Under New York law, "to render a contract enforceable absolute certainty is not required; it is enough if the promise or agreement is

sufficiently definite and explicit so that the intention of the parties may be ascertained 'to a reasonable certainty.'" Don King Prods., Inc. v. Douglas, 742 F. Supp. 741, 762 (S.D.N.Y. 1990) (quoting Varney v. Ditmars, 217 N.Y. 223, 228, 111 N.E. 822 (1916)). "'Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear.'" Canet, 917 F. Supp. at 992 (quoting Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 483, 548 N.Y.S.2d 920 (1989)).

Here, after the expiration of the Written Agreement, Penson promised plaintiff several times that he remained entitled to receive Participation Payments. Specifically, Penson told Farricker he would earn substantially more money than Farricker anticipated because of the deals then pending; that Farricker would receive his "15%" after defendant closed on a property; and that pursuant to their employment agreement, plaintiff was entitled to "profit participation." (Am. Compl. ¶¶ 17-19)

Penson's statements directly reference plaintiff's right to Participation Payments under the Written Agreement. The Written Agreement sets forth the requirements for plaintiff to receive these payments. Accordingly, because there is an extrinsic source supplying the meaning of any missing terms, defendant's oral promises were sufficiently definite and enforceable. See Canet, 917 F. Supp. at 992 (subsequent agreement established necessary missing terms for prior oral contract when employer later specified percentage interests in projects and amount of plaintiff's bonus); cf. Ronan Assocs., 24 F.3d at 449 ("Parties to a contract are plainly free to incorporate by reference, and bind themselves inter sese to, terms that may be found in other agreements to which they are not party."); Richard A. Lord, Williston on Contracts, § 4:30 at 864, 873-74 (4th ed. 2001) (promise may be sufficient to create binding obligation even if vague or indefinite where promise contains a reference to some document, transaction or other extrinsic

facts from which its meaning may be made clear, including "reference to another agreement for a definition of terms") (collecting cases).[7]

III.    PLAINTIFF IS ENTITLED TO RECEIVE
        PARTICIPATION PAYMENTS POST-TERMINATION

As discussed above (see pp. 1-2, supra), plaintiff claims he is entitled to two types of Participation Payments pursuant to the written and oral agreements. First, plaintiff alleges that is he entitled to Participation Payments for Deals that defendant consummated and received cash distributions for during his tenure. (Am. Compl. ¶¶ 20-22) These Participation Payments were due to plaintiff prior to his discharge. Second, plaintiff seeks a declaratory judgment stating that he is entitled to "current" Participation Payments for Deals that defendant completed during his employment, but where defendant had not received a cash distribution at the time it fired him. (Am. Compl. ¶¶ 14, 37) In other words, although the "current" Participation Payments were not due during his tenure, plaintiff retained rights to these payments beyond the term of his employment. A declaratory judgment is the appropriate remedy for this claim because, at the time defendant fired Farricker, defendant had not received cash distributions for these Deals and thus did not have to pay plaintiff at that time.[8]

A.    Plaintiff Is Not Barred From Recovering Participation
      Payments for Deals Completed During His Employment

Defendant contends that plaintiff is not entitled to Participation Payments even if a contract was in effect throughout plaintiff's employment and Penson Development fired

---

[7]    If plaintiff is found not to have alleged adequately the terms of the parties' oral contract, plaintiff respectfully requests leave to replead pursuant to Fed. R. Civ. P. 15(a) in order to specify those terms. (See n.1, supra)

[8]    Penson Development sold certain properties, but had not received payment for these Deals at the time of Farricker's discharge. Farricker does not know whether defendant has received payment since the end of his employment.

plaintiff "Without Cause."[9]  (Def. Mem. 10-11)  Defendant cites Section 3.2,[10] which provided,

inter alia, that if defendant fired Farricker due to his death or disability, plaintiff was entitled to

compensation for the "fair market value of each then current Participation Rights."  (Am.

Compl., Exhibit A § 3.2; emphasis supplied)  Defendant asserts that, because plaintiff's firing

was not due to death or disability, plaintiff cannot recover any Participation Payments post-

employment.  (Def. Mem. 10-11)  Section 3.2, however, does not apply to plaintiff's breach of

contract claims.

Section 3.2 concerned severance payments.  Plaintiff does not seek contract

damages because of defendant's failure to pay severance.  Plaintiff alleges breach of contract

because defendant did not pay wages – Participation Payments – due prior to his dismissal for

work he performed during the contract period.  Moreover, the phrase "then current Participation

Rights" in Section 3.2 necessarily referred to ongoing Deals, and not to Deals already completed

---

[9]  The Written Agreement provided that defendant could fire plaintiff both for "Cause" and "Without Cause."  In summary, the Written Agreement defined termination for "Cause" as:  (a) reasonable evidence that plaintiff committed a felony, any lesser crime or offense involving the property of defendant or any Penson Company, or a crime or lesser offense involving moral turpitude; (b) any acts or omissions that constitute gross negligence, willful misconduct or a breach of the duty of loyalty to defendant or any Penson Company; (c) any failure to perform satisfactorily duties for defendant or any Penson Company; (d) any material breach of the Agreement; or (e) any commission of an act of fraud or dishonesty toward defendant or any Penson Company.  (Am. Compl., Exhibit A § 3.1.3; Am. Compl. ¶ 28)  Section 3.1.4 specified that defendant could fire plaintiff "Without Cause," "for any reason whatsoever (other than for [death, disability, or Cause])."  (Am. Compl., Exhibit A § 3.1.4)

[10]  Section 3.2 set forth "certain obligations of [defendant] following termination of [plaintiff's] employment."  (Am. Compl., Exhibit A § 3.2)  In particular, Section 3.2.1 of the Written Agreement specified that if defendant fired plaintiff for Cause, any of plaintiff's "then current Participation Rights shall be immediately, on the date of such termination, forfeited and [plaintiff] shall not receive any further payments in respect of such Participation Rights."  (Am. Compl., Exhibit A § 3.2.1; emphasis supplied)  The Written Agreement also provided that if defendant fired plaintiff because plaintiff died or became disabled, Farricker was entitled to "an additional payment to compensate him for the fair market value of each then current Participation Rights, which fair market value shall be determined by [defendant] in good faith." (Am. Compl., Exhibit A §§ 3.2.1, 3.2.2)  In addition, Section 3.3 stated that "[a]ll amounts to be paid by [defendant] to [Farricker] pursuant to . . . Section 3 are considered by the parties to be severance payments."  (Am. Compl., Exhibit A § 3.3)

where defendant had received a cash distribution; any other interpretation would render the phrase "then current" unnecessary. See Subaru Distribs. Corp. v. Subaru of Am., Inc., No. 03 Civ. 9608 (SCR), 2004 WL 3220120, at *7 (S.D.N.Y. June 1, 2004) (rejecting plaintiff's proposed interpretation because it "would render certain provisions of the contract meaningless and improperly expand other provisions beyond the plain meaning of their terms").

Another provision in Section 3.2 demonstrates that the "death or disability" limitation is not applicable to Deals consummated during plaintiff's tenure. This provision sets forth a process for determining the "market value" of then current Participation Rights. (Am. Compl., Exhibit A § 3.2) Plainly, if defendant finalized the Deal and received a cash distribution before it fired plaintiff, there would be no need to ascertain the fair market value.

Defendant cites (Def. Mem. 11) two cases in support of its argument – Log On America, Inc. v. Promethean Asset Management LLC, 223 F. Supp. 2d 435 (S.D.N.Y. 2001), and Goodman Manufacturing Co. L.P. v. Raytheon Co., No. 98 Civ. 2774 (LAP), 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999). In both cases, the Court dismissed the plaintiffs' contract claims because they conflicted with the specific language of the agreement at issue. Log On Am., 223 F. Supp. 2d at 440-41, 443-45, 448, 450-51; Goodman Mfg. Co., 1999 WL 681382, at *10, *13-*14. In this case, in contrast, the language of the Written Agreement and the distinction between Participation Payments and "then current" Participation Payments supports plaintiff's claim that the circumstances of his dismissal are irrelevant to his entitlement to compensation for Deals defendant consummated and received payment for prior to his dismissal. The discussion in both cases defendant cites thus concerns circumstances – legal and factual – not relevant here.

Section 3.2 therefore does not bar Farricker from recovering Participation Payments owed because of defendant's failure to pay during his tenure.

B.    Plaintiff Is Entitled To Participation Payments For Deals
Where Defendant Will Receive Payment After His Dismissal

In addition to damages, plaintiff seeks declaratory relief pursuant to 28 U.S.C. §

2201.  Unlike Farricker's breach of contract claims, plaintiff's claim for declaratory relief

concerns the propriety of his discharge as well as ongoing deals.  As defendant fired plaintiff

Without Cause (Am. Compl. ¶ 29), defendant's arguments in support of dismissal of this claim

are unavailing.

Defendant asserts (Def. Mem. 4) that pursuant to the Written Agreement,

Farricker was eligible to receive Participation Payments only for Deals where Penson

Development received a cash distribution during his employment.  There is, however, nothing in

the Written Agreement (or, as incorporated, in the oral agreement) to support defendant's

contention.  Section 2.2 required only that the Deal took place during plaintiff's employment:

"[Plaintiff] shall be entitled to the following amounts . . . for each Deal consummated by a

Penson Company during [plaintiff's] employment. . . ."  (Am. Compl., Exhibit A § 2.2)

Furthermore, Section 3.2.1 of the Agreement provided, inter alia, that if defendant fired plaintiff

for Cause, plaintiff forfeited his "then current Participation Rights."  (Am. Compl., Exhibit A §

3.2.1)  There was no provision that barred plaintiff from retaining then current Participation

Rights – where no cash distribution had occurred – if defendant fired plaintiff Without Cause.

Since plaintiff alleges that defendant fired him Without Cause (Am. Compl. ¶ 28), he did not

forfeit his future entitlement to Participation Payments where there were cash distributions after

his dismissal.

As previously discussed (see pp. 15-16, supra), defendant contends that, under

Section 3.2, if plaintiff's firing was not due to death or disability, plaintiff forfeited all rights to

Participation Payments.  (Def. Mem. 10-11)  Defendant reads this provision too broadly.

Construing the provision as defendant suggests renders Section 3.2.1's forfeiture clause

superfluous.  Under defendant's interpretation, all of plaintiff's rights to Participation Payments post-termination would revert to defendant (unless plaintiff died or was disabled) even if the Written Agreement did not contain the forfeiture provision in a firing for Cause.  See Subaru Distribs. Corp., 2004 WL 3220120, at *7 (rejecting plaintiff's proposed interpretation because it "would render certain provisions of the contract meaningless and improperly expand other provisions beyond the plain meaning of their terms").  Section 2.2 guaranteed plaintiff rights to Participation Payments for Deals completed during his employment, and the forfeiture provision did not negate those rights in the event of a firing Without Cause.  Plaintiff therefore is entitled to Participation Payments post-termination for those Deals where defendant receives compensation after his dismissal.[11]

At the very least, the contract language with respect to "then current Participation Rights" is ambiguous.  Even if the plain language of the Written Agreement does not establish that plaintiff retained his entitlement to "then current" Participation Payments post-termination, defendant's motion should still be denied.  Plaintiff is entitled to discovery to resolve what is, at the very least, an ambiguity as to his rights.  See Nadherny v. Roseland Prop. Co., Inc., 390 F.3d 44, 49-51 (1st Cir. 2004) (denying summary judgment, inter alia, because words in contract were ambiguous as to whether plaintiff's unvested interests in defendants' projects reverted to defendants upon termination of employment); Peregrine Fixed Income Ltd. v. JP Morgan Chase Bank, No. 05 Civ. 4351 (RMB)(THK), 2006 WL 196967, at *2 (S.D.N.Y. Jan. 26, 2006) ("[T]he presence of an ambiguity in a contract would render dismissal of the Complaint [on a motion to dismiss] improper.").

---

[11]    The Written Agreement logically set forth a process for assessing the market value of current Participation Payments if Farricker dies or became disabled.  (Am Compl., Exhibit A § 3.2)  No such process was necessary if defendant fired him Without Cause, as Farricker could simply await the post-dismissal cash distribution and receive 15% thereof.

Defendant also suggests (Def. Mem. 9-10) that Penson Development fired plaintiff for Cause under the contract and plaintiff forfeited all then current rights to Participation Payments under Section 3.2.1. Principally, defendant asserts (Def. Mem. 9-10) that plaintiff's candidacy for local office in 2007 would have prevented Farricker from fulfilling his duties, thus providing Cause for discharge under the Written Agreement. However, whether plaintiff's election campaign would have interfered with his job duties presents a factual question. Indeed, defendant did not terminate Farricker's employment in 2006 when plaintiff engaged in precisely the same conduct – running for local office. At a minimum, defendant's prior conduct suggests that plaintiff's run for office in 2007 would not have affected his job performance. A determination as to whether Farricker's candidacy constitutes Cause therefore requires discovery and dismissal at this time is inappropriate. See Coritsidis v. Consumer Home Mortgage, Inc., 265 A.D.2d 521, 522, 697 N.Y.S.2d 126 (2d Dep't 1999) (factual issue existed as to whether plaintiff's conduct constituted "act[ing] in a manner contrary to the business practices" of defendant in violation of the employment agreement).

Penson Development also contends (Def. Mem. 10) that plaintiff's claim requesting declaratory relief should fail because there was no agreement in place. For the reasons discussed above concerning the parties' oral contract, defendant's argument should be rejected.

C.     In the Alternative, Plaintiff States a Claim for
       Fraudulent Inducement or Promissory Estoppel

In the event that plaintiff is not successful on his oral contract claim, alternatively he has pleaded facts sufficient to establish a claim for fraudulent inducement and/or promissory estoppel. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff

reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted). Similarly, to establish promissory estoppel, plaintiff must allege (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance on the promise, and (3) an injury as a result of that reliance. Rogers. v. Town of Islip, 230 A.D.2d 727, 727, 646 N.Y.S.2d 158 (2d Dep't 1996). Plaintiff satisfies both standards.

Plaintiff has alleged with specificity that, on several occasions after the expiration of the Written Agreement, Penson promised Farricker that his employment terms continued to include the right to Participation Payments. (Am. Compl. ¶¶ 17-19) However, although Penson Development completed Deals during plaintiff's employment and received cash distributions exceeding its costs, defendant never paid Farricker Participation Payments. (Am Compl. ¶¶ 20-22) If Penson did not intend to fulfill his oral promises as a contract, he nevertheless sought to entice plaintiff to remain at Penson Development. Based on Penson's statements, plaintiff continued to work for defendant, did not seek employment elsewhere, and suffered financial harm, which included loss of income.[12] Thus, either Penson intended defendant to be bound by his promises and created an enforceable oral contract or else he did not; if not, his conduct is actionable under the doctrines of promissory estoppel or fraudulent inducement. Plaintiff therefore should be permitted to plead those claims in the alternative. (See n.1, supra)[13]

---

[12]  See Navigant Consulting, Inc. v. Kostakis, No. 07 Civ. 2302 (CPS)(JMA), 2007 WL 2907220, at *4-*5 (E.D.N.Y. Oct. 4, 2007) (denying motion to dismiss on fraudulent inducement claim where employee alleged that employer made false oral promises that it would promote employee within a year and that he would earn $400,000 in total compensation); Rogers, 230 A.D.2d at 727-28 (employee stated claim for promissory estoppel in employment context); Bones v. Prudential Fin., Inc., 17 Misc. 3d 656, 659-60, 847 N.Y.S.2d 348 (Sup. Ct. N.Y. Co. Aug. 20, 2007) (employee successfully stated promissory estoppel claim where, contrary to employer's alleged promises, at the time defendant fired employee he forfeited his stock options and did not receive his 2004 bonus).

[13]  See Singer v. Jefferies & Co., 160 A.D.2d 216, 218, 553 N.Y.S.2d 346 (1st Dep't 1990) ("That we are unable to precisely categorize this tort is of no import, since [i]t is axiomatic that the simple fact that [a plaintiff's] action does not fit into a nicely defined or established 'cubby-

IV.    **PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE LABOR LAW**

   A.    Plaintiff Does Not Assert a Claim Under Labor Law Section 198-c

Defendant argues that plaintiff may not invoke the protection of Labor Law § 198-c for his unpaid wages because he was an "executive." (Def. Mem. 11) Defendant has once again misconstrued plaintiff's claims. Plaintiff does not assert a claim under Section 198-c. Rather, as plaintiff explicitly alleges, he seeks relief pursuant to Labor Law § 193. (Am. Compl. ¶ 39)[14]

Despite plaintiff's specific allegations, defendant argues that Labor Law § 198-c is the appropriate Labor Law provision because it applies to severance. Indeed, Labor Law § 198-c addresses an employer's failure to "pay benefits or wage supplements to employees," including non-payment of severance. Labor Law § 198-c(1), (2). Section 198-c, however, is irrelevant to plaintiff's Labor Law claims, which are unrelated to any entitlement to severance or any other wage supplement.[15]

Contrary to defendant's assertion (Def. Mem. 11), § 3.3 of the Written Agreement does not render all post-termination Participation Payments "severance." Instead that provision specified only that, "[a]ll amounts to be paid . . . to [plaintiff] pursuant to . . . Section 3 are

---

hole' of the law does not in itself warrant the denial of relief to him.") (internal quotation marks and citation omitted).

[14]    Section 193 of Article 6 provides, in pertinent part:

> No employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee . . . . Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, . . . and similar payment for the benefit of the employee.

[15]    Labor Law § 198-c(2) specifies that the term "benefits or wage supplements" includes "reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

considered by the parties to be severance." (Am. Compl. Exhibit A § 3.3) Plaintiff alleges a Labor Law violation based on defendant's failure to pay him wages for work performed during his tenure. Plaintiff seeks compensation pursuant to <u>Section 2</u> of the Written Agreement and subsequent oral promises that parallel the relevant provisions of <u>Section 2</u>, not Section 3.

The Amended Complaint alleges that the Participation Payments constitute "wages" within the meaning of the Labor Law that were due to plaintiff under Section 193, and that by refusing to pay plaintiff the Participation Payments, defendant violated Section 193(1). (Am. Compl. ¶ 39) Therefore, plaintiff's claim is governed by Labor Law § 193, and not Labor Law § 198-c. <u>See</u> <u>Simas v. Merrill Corp.</u>, No. 02 Civ. 4400 (RCC), 2004 WL 213013, at *6 n.12 (S.D.N.Y. Feb. 4, 2004) (Labor Law § 198-c not applicable where court already concluded that signing bonuses were wages, because bonuses could not "also be considered a wage supplement").

B.    <u>Plaintiff States a Claim Under Labor Law Section 193</u>

1.    <u>Plaintiff Is an Employee Within the Meaning of Labor Law Section 193</u>

Defendant also suggests that plaintiff is not protected under Labor Law § 193 because he was an "executive." (Def. Mem. 12) The "executive exception" that defendant invokes does not apply to the provision under which plaintiff asserts his claim, Section 193 of the Labor Law. The executive exception refers to subcategories of workers that are expressly exempt from the protections of Labor Law §§ 191, 192, and 198-c, which plaintiff does not rely upon in his Amended Complaint.

Section 193, in contrast, does not limit its coverage of employees; rather that provision applies to any "employee." Section 190(2) defines "employee" as "any person employed for hire by an employer in any employment." As this Court stated in an exhaustive analysis of the pay provisions of Article 6 of the Labor Law, "the text of Article 6, as well as its context, and weight of case law applying the statute, support a broad interpretation of the

definition of 'employee,' and the conclusion that executives, professionals, managers and administrators are not categorically excluded." Miteva v. Third Point Mgmt. Co., 323 F. Supp. 2d 573, 585 (S.D.N.Y. 2004). This Court has repeatedly rejected the argument that would incorporate exemptions into sections of Article 6 other than Sections 191, 192, and 198-c. "[T]he weight of authority . . . supports the Court's current holding that the term employee for Article 6 purposes is not limited to non-supervisory employees, but rather includes all persons employed for hire." Cohen v. Stephen Wise Free Synagogue, No. 95 Civ. 1659 (PKL), 1996 WL 159096, at *4 (S.D.N.Y. Apr. 4, 1996).

Notwithstanding the detailed reasoning of the foregoing authority, some decisions have stated that the Labor Law protections are not available to anyone holding a supervisory, managerial or executive position. Defendant cites two cases in support of this proposition: Rice v. Scudder Kemper Investments, Inc., No. 01 Civ. 7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003), and Davidson v. Regan Fund Management, 13 A.D.3d 117, 786 N.Y.S.2d 47 (1st Dep't 2004). (Def. Mem. 12) Both cases rely on Gottlieb v. Kenneth D. Laub & Co., Inc., 82 N.Y.2d 457, 605 N.Y.S.2d 213 (1993).[16] Gottlieb, however, had nothing to do with improper wage deductions under Labor Law § 193. Rather, the decision stands for the unremarkable proposition that an employee may not collect attorneys' fees under the Labor Law if he does not prevail on a claim based on the Labor Law and prevails instead, for instance, on a common law contract claim. See Gottlieb, 82 N.Y.2d at 463.

In Gottlieb, the Court stated in dicta that "executives" are not "employees" under Article 6: "Except for manual workers, all other categories of employees entitled to statutory

---

[16]    Rice, 2003 WL 21961010, at *3-*4; Davidson, 13 A.D.3d at 118.

protection <u>under Labor Law § 191</u>[17] are limited by definitional exclusions of one form or another for employees serving in an executive, managerial or administrative capacity." <u>Gottlieb</u>, 82 N.Y.2d at 461 (emphasis supplied). This statement, however, is "entirely consistent" with this Court's conclusion that executive employees are entitled to protection <u>under Labor Law § 193</u>. <u>Miteva</u>, 323 F. Supp. 2d at 584.[18]

        2.     <u>Labor Law Section 193 Applies To All Wage Reductions</u>

Defendant erroneously asserts that Labor Law § 193 does not cover plaintiff's claim because that provision prohibits an employer from making improper deductions or withholdings, but does not apply to claims alleging a failure to pay wages or wage benefits owed pursuant to an agreement. (Def. Mem. 12-13) Contrary to defendant's argument, however, Labor Law § 193 prohibits <u>all</u> wage reductions. Section 193 provides, in pertinent part: "No employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee. . . ." The text expressly prohibits any wage deduction under any circumstance, save for the few listed in the statute.

Defendant's proposed interpretation of Section 193 runs contrary to courts' liberal construction of the Labor Law. <u>Klepner v. Codata Corp.</u>, 139 Misc. 2d 382, 384, 527 N.Y.S.2d 158 (Sup. Ct. N.Y. Co. 1988) (citation omitted) ("The Labor Law . . . [is] required to be liberally construed to accomplish the beneficent purposes for which [it was] enacted."); <u>see Cohen</u>, 1996 WL 159096, at *4 ("[T]he goal of § 193 . . . is to afford strong protection of the wages of

---

[17]    Labor Law § 191 concerns the frequency with which an employer must pay specific workers, <u>i.e.,</u> "manual workers," "railroad workers," "commission salesmen," and "clerical and other workers."

[18]    The Second Circuit has certified to the New York Court Appeals the issue of whether an "executive" is an employee under the Labor Law for purpose of Section 193. <u>Pachter v. Bernard Hodes Group, Inc.</u>, 505 F.3d 129, 133-34 (2d Cir. 2007) (inclined "to defer to the text of section 193 and conclude that executives are covered"); <u>see Pachter v. Bernard Hodes Group, Inc.</u>, 9 N.Y.3d 971, 848 N.Y.S.2d 9 (2007) (accepting certification of that question).

employees. . . ."). Furthermore, defendant's argument directly conflicts with New York case law. See, e.g., Tuttle v. Geo. McQuesten Co., 227 A.D.2d 754, 754-56, 642 N.Y.S.2d 356 (3d Dep't 1996) (granting summary judgment in favor of plaintiff on his Labor Law § 193 claim where defendant refused to pay plaintiff deferred compensation at the time of his resignation); Carlson v. Katonah Capital, L.L.C., 10 Misc. 3d 1076(A), 814 N.Y.S.2d 889 (Sup. Ct. N.Y. Co. Jan. 27, 2006) (denying defendant's motion to dismiss Labor Law § 193 claim where employer had refused to pay allegedly discretionary incentive compensation). Although these courts do not directly address defendant's argument, they find that the complaints state claims for violation of Labor Law § 193, where, as here, the employers did not pay plaintiffs earned compensation.[19]

Farricker alleges that he was entitled to the Participation Payments as contractually negotiated wages and that Penson Development improperly withheld those wages. Plaintiff therefore states a claim under Labor Law § 193.

---

[19]    Monagle v. Scholastic, No. 06 Civ. 14342 (GEL), 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007), cited by defendant (Def. Mem. 12), does not compel a different conclusion. In Monagle, plaintiff sought unpaid compensation owed pursuant to a severance agreement. Id. at *1, *2. The Court granted defendant's motion to dismiss all of the Labor Law claims. Id. at *2-*3. In rejecting plaintiff's Labor Law § 193 claim, the Court opined that, "Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages." Id. at *2 (citing Kletter v. Fleming, 32 A.D.3d 566, 820 N.Y.S.2d 348, 350 (3d Dep't 2006)). As severance benefits were at issue in Monagle, the Court's reference to wages is dicta. Moreover, the Court cited no statutory language to substantiate a distinction between deduction by withholding and deduction by non-payment.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss should be denied.

Dated:  New York, New York
        March 28, 2007

                              VLADECK, WALDMAN, ELIAS
                              ENGELHARD, P.C.

                        By:_____
                              Debra L. Raskin
                              Attorneys for Plaintiff
                              1501 Broadway, Suite 800
                              New York, New York 10036
                              (212) 403-7300