Jamie M. Brickell
Suyin So
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100
*Attorneys for Penson Development, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FRANK FARRICKER,

                Plaintiff,

    v.

PENSON DEVELOPMENT, INC.,

                Defendant.
-------------------------------------------------------------------X

ECF Case

Civil Action No:
07-CV-11191 (DAB)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PENSON
DEVELOPMENT, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant Penson Development, Inc. ("Penson") respectfully submits this reply memorandum of law in further support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint ("Amended Complaint") filed by Plaintiff Frank Farricker ("Farricker"). For the reasons set forth herein, the motion should be granted and the Amended Complaint dismissed in its entirety.

## PRELIMINARY STATEMENT

During the brief history of this case to date, Farricker has interposed a number of inconsistent factual recitations and legal theories, but in essence, he contends that he is entitled to "Participation Payments" from Penson, his former employer. Despite having already amended his unverified complaint once, and now relying on new facts included in a memorandum of law unaccompanied by a sworn affidavit, the simple truth is that Farricker still has not alleged any set of facts which would entitle him to this compensation.[1]

Commencing in 2004, and working originally pursuant to the Agreement, which was written and provided for a one-year term, Farricker served as Penson's Director of Acquisitions. He left in 2007. Under the Agreement, Farricker would become eligible for additional compensation in the form of Participation Payments if he identified "potential [i.e., new] Real Estate Projects" for investment or resale by or for Penson or a Penson affiliate during his employment with Penson. Not that Farricker would work on a deal already at Penson at the time he arrived, but that he would identify opportunities for the company. The Agreement also specifically provided that he would receive Participation Payments for such transactions, or "Deals," only if they were consummated during his employment under that Agreement. As shown in Defendant's moving brief, the Agreement expired by its own terms, without ever being

---

[1] Defendant, in this brief, employs the same defined terms as set forth in its moving papers.

renewed, in 2005, and Farricker has not alleged that he identified any "Deals" or that any of them were consummated before then.

Based on these facts alone, Farricker's purported claims under the Agreement must be dismissed. Indeed, even if this Court were to conclude that the Agreement somehow continued beyond its expiration date, or that the parties thereupon entered into a new oral agreement which contained the same terms as the written Agreement – a conclusion inconsistent with the law cited in Defendant's original moving papers – Farricker still has not pleaded or argued a basis for concluding that he could be entitled to Participation Payments. Stated simply, Farricker has not alleged that he <u>ever</u> identified, in his three years working under any conceivable written or oral employment agreement with Penson, any <u>potential</u> real estate transactions which were consummated by Penson while he was employed there. He may have worked on transactions, and he may have even played a significant role in them, but none of them constituted "Deals," as defined in the Agreement, because he never identified them.

Farricker's additional claims invoking New York State's Labor Law fail for similar pleading deficiencies. He has alleged, at most, that Defendant failed to pay him an unearned wage, but seeks relief under Labor Law § 193, which is a prohibition on improper deductions. Not only has Farricker not alleged a deduction, the statutory interpretation he urges is directly contrary to the one cited case presented to the Court on this issue and would thoroughly upend the entire statutory regime and contradict § 193's plain meaning.

Hoping to salvage his flawed Amended Complaint, Plaintiff for the first time raises the possibility that he has alternative pleading theories of promissory estoppel or fraudulent inducement and, in effect, apparently seeks leave to amend his complaint for the second time. Putting aside the improper nature of these allegations in opposition to a motion to dismiss,

Farricker's own proposed amendments cannot save his claims and only underscore the futility of any repleading.

For these reasons, the Amended Complaint should be dismissed with prejudice and the Court should deny leave to amend.

## ARGUMENT

### I. FARRICKER FAILS TO ALLEGE ANY FACTS UNDER WHICH HE WOULD BE ENTITLED TO PARTICIPATION PAYMENTS

Nowhere in his pleadings or in this motion has Farricker established that he is entitled to Participation Payments. The Agreement provided that Farricker could only participate in Deals which closed and generated profits in the Agreement's one-year term between 2004 and 2005. The Agreement did not renew. At page 9 of his opposition, Farricker concedes that only one "Deal," the sale of the Mohegan Apartments was consummated in 2005.[2] Opp. Mem. 9. Thus, at most – and Defendant does not accept his interpretation that this would constitute a "Deal" under the Agreement – Farricker is seeking a finding that he is entitled to Participation Payments on that one transaction. This single alleged "Deal" is the only possible basis for Participation Payments since the Agreement was not renewed. In his opposition papers, Plaintiff essentially concedes that Goldman v. White Plains Ctr. for Nursing Care, LLC, 43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't 2007), appeal docketed, No. 1115, 105701/05 (2007), accurately establishes that an employment agreement containing specific renewal terms will not renew absent compliance with those specific renewal terms. Penson never renewed the Agreement in writing, which was the sole renewal mechanism contained in the Agreement, and so this Court

---

[2] Plaintiff does not allege that he ever requested or demanded Participation Payments before he left Penson. Indeed, it is obvious from the pleadings and from his opposition papers that Farricker's initial "demand" for these significant sums of money was this lawsuit, which Farricker brings three years after he claims his Participation Payments accrued for the sale of the Mohegan Apartments. If Farricker really believed that he was entitled to as much as $800,000, as his complaint suggests, it is inconceivable that he never asked, orally or in writing, for payment for years.

703802                                    3

should conclude, at the outset, that the Agreement expired by its own terms one year after it was executed, regardless of how long Farricker continued working for the company.

Farricker further alleges in his submission in opposition that the parties entered into an oral agreement when the Agreement expired and that that oral agreement "adopted some terms from the Written Agreement (like 'Participation Payment')." Opp. Mem. p. 11. Those self-serving allegations, including statements allegedly made in the presence of third parties to the effect that Plaintiff had an employment agreement and was entitled to Participation Payments thereunder, are too vague to constitute the basis for concluding that any such agreement existed. However, once again, even if this Court were to conclude that one could cobble together an oral agreement based on such nonspecific assertions, Farricker still has not alleged facts which, taken as true for these purposes, would entitle him to Participation Payments under any set of circumstances.[3] This incurable pleading deficiency renders his cause of action for breach of contract, and the entire Amended Complaint, meritless.

Indeed, even assuming that the parties' understanding of the specific Participation Payment term continued in effect throughout the time that Farricker provided services to Penson, he has not alleged that he fulfilled the conditions which would give rise to his right to Participation Payments; namely, that he identified a Real Estate Project which did not exist prior to his employment which was consummated during his employment with Penson. It is axiomatic that in order to state a cause of action for breach of contract, there must be performance. See, e.g., Insinga v. Cooperatiev Centrale Raiffeisen Borenleenbank B.A., 03 Civ. 7775 (RJH), 2005

---

[3] Plaintiff also mischaracterizes Penson's argument concerning "severance" payments. Because no "Deals" were consummated while Farricker was employed under the written Agreement, he could not qualify for Participation Payments. Defendant looked at the severance provisions of the Agreement because they provide the only conceivable form of payment to which Farricker could possibly be entitled, under his own pleading, after leaving the company. As thoroughly addressed in Penson's moving papers, however, and as Farricker now appears to concede, he is not entitled to severance payments after he ceased employment under the Agreement either.

703802                                4

U.S. Dist. LEXIS 21104 162, 168 (S.D.N.Y. Sept. 20, 1998). Farricker carefully omits any allegations which would demonstrate performance. For example, in his opposition, Farricker ominously states that he was not paid Participation Payments from Deals which were profitably completed after the one-year Agreement ended. Opp. Mem. 9. Notably, he does not assert that he was entitled to such Participation.

A comparison of Farricker's allegations and the contractual basis which he claims entitles him to additional compensation – the contractual definition of "Participation" at § 2.2.2 of the Agreement – demonstrates the fatal deficiencies of his claim: "Executive shall be entitled to the following amounts (… 'Participation Payments') for each Deal consummated by a Penson Company during Executive's Employment." The definition of a "Deal" which would give rise to Participation is contained in Farricker's job description, at § 1.1.1, lists Farricker's duties as:

> (a) *identifying potential* Real Estate Projects for (i) investment by or for the account of a Penson Company or (ii) investment by or resale to others of either the Real Estate Project or the contract pursuant to which a Penson Company acquired the rights to acquire the Real Estate Project, (each such transaction a "Deal" and collectively, the "Deals") . . .[4]

The Oxford American Dictionary defines the word "Identify" to mean "Establish the identity of; recognize; establish or select by consideration or analysis of the circumstances." OXFORD AM. DICTIONARY OF CURRENT ENGLISH 388 (1999). It further defines the word "Potential" to mean "capable of coming into being or action; or latent." Id. 616. According to these plain meanings, in order for Farricker to receive Participation Payments, he had to establish or select a possible or latent real estate project which would be completed during his employment. Farricker has not alleged this. Instead, he is deliberately vague, alleging first that he "helped initiate the [Mohegan Apartments] transaction," which he then explains by alleging

---

[4] The Agreement defines "Real Estate Project" as the "business of acquiring, owning, operating, managing and selling residential and commercial real estate." Am. Compl., Exh. A.

that "he structured the sale, assisted and advised in all facets of negotiation, secured and supervised the appropriate sales broker, and attended the closing in place of Penson. Id. at 5. Then, recognizing that this was still insufficient, Farricker adds another immaterial fact, stating in a footnote of an unverified memo that he also "identified the buyer." Clearly, at most, he is claiming that he performed services in connection with the one transaction that "consummated" during the term of the written Agreement, but he also tacitly concedes that it had been a Penson transaction before he was employed there. Farricker is not entitled to Participation Payments just for doing the job that netted him $6,000 and later $9,000 per month in salary. Opp. Mem. 5.

Farricker also alleges in his opposition brief that Penson "consummated certain deals" during his employment. Id. Notably, however, while the Oxford American Dictionary also defines "consummate" to mean "complete," Farricker's entire premise for seeking fees on any of these purported "Deals" is that they were not completed while he was still employed at Penson. OXFORD AM. DIC. 167. He alleges affirmatively that Penson did not receive cash distributions from any of these unnamed "Deals" until after Farricker's departure. Opp. Mem. 13, f. 8. Again, by the plain (dictionary) definition of the terms in the Agreement, none of them were "completed" while he worked at Penson, and so none of them would justify paying Farricker any "Participation Payments."

Finally, in this regard, if the parties had intended to provide Participation Payments to Farricker for his work on existing Real Estate Projects, they would have provided for such a term in the definition of "Deals." Goldman, 43 A.D.3d 251 (plain meaning of unambiguous terms of employment agreement should be enforced). They did not. Based on any version of the parties' agreement, whether written or oral, there is no set of facts upon which Farricker could state a claim upon which this Court may grant relief.

## II. THE LABOR LAW CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED AN IMPROPER "DEDUCTION"

Plaintiff mischaracterizes Penson's arguments and misstates the scope and application of the Labor Law. Plaintiff is correct in pointing out that New York courts are not uniform as to whether executives such as Farricker are entitled to all of the Labor Law's substantive protections, compare Cohen (all persons for hire included for purposes of Article 6 definition of "employee") with Carlson v. Katonah Capital, LLC, 10 Misc. 3d 1076(A) (Sup. N.Y. 2006) (dismissing executives' claims as barred; "certainly employees who qualify as executives cannot assert wage claims under any substantive provision of Article 6, including § 193").

Even accepting that Farricker could be entitled to Article 6's substantive protections, however, he has failed to state a claim for relief under Labor Law § 193 and instead seeks to engraft an absurd interpretation onto that subsection's prohibition on "deductions." As Plaintiff recites, the statutory text prohibits "any wage deduction under any circumstance." Opp. Mem. 21-23, citing Miteva v. Third Point Mgmt. Co., 323 F. Supp. 2d 573, 577 *S.D.N.Y. 2004) (plaintiff specifically alleged, in addition to the failure to pay, that her former employer made illegal deductions from her salary). Notably, Farricker does not allege in his Amended Complaint or opposition papers that Penson improperly withheld or deducted wages. Instead, he asserts that § 193 prohibits "all wage reductions." Id., emphasis in original. Taken to its logical conclusion, Farricker's interpretation of Labor Law § 193 would prohibit employers from reducing any employee's wages for any reason. Such an impermissible expansion of the legislative intent behind § 193 is without support.

Plaintiff has not provided any authority, beyond a general reference to the broad legislative intent behind the enactment of the entire Labor Law, to substitute "reduction" for "deduction." Am. Compl. ¶ 39. Indeed, footnote 19 on page 24 of his submission acknowledges

703802                                    7

that Monagle v. Scholastic, No. 06 Civ. 14342 (GEL), 2007 WL 766282 (S.D.N.Y. Ma. 9, 2007), cited by Defendant in its moving papers, stands for the proposition that "Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages." Quite honestly, the law on this point could not be much clearer. Here, where Farricker failed to demonstrate that he earned Participation Payments and has not alleged even the barest entitlement to relief under § 193 – i.e., that Penson withheld or made deductions from his wages – his first and second causes of action must be dismissed.

### III. PLAINTIFF'S NEWLY PROPOSED ALTERNATIVE PLEADINGS LACK MERIT AND LEAVE TO AMEND SHOULD BE DENIED FOR FUTILITY

To the extent that Plaintiff, sensing the impending grant of the instant motion, seeks to raise additional causes of actions in his opposition papers, such "soft" claims cannot be proven and are improperly raised on a motion to dismiss. In his memo, for the first time, Farricker suggests that he wants to add promissory estoppel or fraudulent inducement claims against Penson.[5] Opp. Mem. pp. 18-19. Plaintiff's sole causes of action are those pleaded in his Amended Complaint, two of which relate to his Labor Law claims and the third of which alleges breach of contract. He cannot improperly raise new causes of action in a motion to dismiss.

Farricker's attempt to replead is particularly improper because he has failed to allege any new facts which would state a valid cause of action. While leave to amend pursuant to Fed. R. Civ. P. 15(a) is "freely . . . when justice so requires," here, where Plaintiff's proposed amendments cannot cure the pleading deficiencies and amendment would be futile, the Court should deny Plaintiff's request. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. N.Y.

---

[5] Notably, New York courts do not recognize a valid cause of action for promissory estoppel in the employment context. Miller v. Citicorp, 95 Civ. (LAP) 1997 U.S. Dist. LEXIS 2395, *29 (S.D.N.Y. Mar. 3, 1997) (granting employer's motion to dismiss for failure to state claim) (collecting cases). As to the fraudulent inducement claim, putting aside Rule 9(b)'s particularity requirements, which Plaintiff plainly cannot satisfy, it is similarly well-settled that a claim for fraud will not lie if it arises "out of the same facts as the plaintiff's breach of contract claim." Ritchie Capital Management LLC v. Coventry First LLC, 07 Civ (DLC) 2007 U.S. Dist. LEXIS 51081, *19-20 (S.D.N.Y. July 17, 2007), citing Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996).

1993) (where amendment of complaint is "unlikely to be productive," denial of leave to amend is proper); see also Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 55 (2d Cir. N.Y. 1998) (denying amendment as futile because it would be subject to immediate dismissal); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. N.Y. 1999) (dismissal for failure to state a claim proper if, after taking all of the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Accepting as true the conclusory allegations that appear to constitute Farricker's proposed amendments, his claims still fail to allege that he has ever been entitled to Participation Payments.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be granted in its entirety, the Amended Complaint should be dismissed with prejudice, and leave to amend should be denied, together with such other and further relief as this Court may deem fit.

Dated: New York, New York
April 4, 2008

Respectfully submitted,

PRYOR CASHMAN LLP

By: *[signature]*
Jamie M. Brickell
jbrickell@pryorcashman.com
Suyin So
sso@pryorcashman.com
410 Park Avenue
New York, New York 10020
(212) 421-4100

Attorneys for Defendant

703802                                9