UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X

FRANK FARRICKER,

          Plaintiff,

        -against-

PENSON DEVELOPMENT, INC.,

          Defendant.
-----------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

07 Civ. 11191 (DAB)
<u>MEMORANDUM & ORDER</u>

      Plaintiff Frank A. Farricker ("Plaintiff") brought this action against Defendant Penson Development, Inc. ("Defendant"), alleging breach of contract and a violation of New York Labor Law, Article 6 ("Labor Law") § 193(1); further, Plaintiff is seeking attorneys fees and liquidated damages under Labor Law § 198 and declaratory relief pursuant to 28 U.S.C. § 2201.

      On December 8, 2008, the Court issued an Order denying Plaintiff's request for leave to file a second amended complaint. Now before the Court is Plaintiff's Motion for Reconsideration of the Court's December 8, 2008 Order and Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated herein, Plaintiff's Motion for Reconsideration is DENIED, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED in part and DENIED in part.

## I. BACKGROUND

The following facts alleged in the Amended Complaint

docketed at 07 Civ. 11191 are assumed to be true for the purpose

of this Memorandum and Order.  In August 2004, Plaintiff and

Defendant entered into an employment agreement (hereinafter

"Written Agreement"), whereby Plaintiff agreed to serve as

Director of Acquisitions for Defendant, a corporation engaged in

the business of real estate development.  The Written Agreement

described Plaintiff's duties as follows:

> (a) identifying potential Real Estate Projects for (i)
> investment by or for the account of a Penson Company or
> (ii) investment by or resale to others of either the
> Real Estate Project or the contracts pursuant to which
> a Penson Company acquired the right to acquire the Real
> Estate Project, (each such transaction a "Deal" and
> collectively, the "Deals"); (b) researching and
> performing due diligence with respect to each such
> Deal, working on all aspects of such Deals, including,
> without limitation, seeking loan commitments from banks
> and other capital sources and (c) interfacing with
> legal counsel, banks and accountants with respect to
> such Deals in order to consummate such Deals . . . .

(Am. Compl., Ex. A § 1.1.1.)

The Written Agreement provided that Plaintiff was to "devote

his best efforts and all of his business time, attention and

skills to the business and affairs of the Penson Companies," with

certain exceptions for Plaintiff's service on civic,

professional, or charitable boards or committees and his

management of his personal investments, but only to the extent

2

such activities did not "prevent [him] from devoting substantially all of his business time to [Defendant]."  (Id. § 1.2.)

In exchange for his efforts, Plaintiff would receive an annual base salary, plus participation payments for certain deals (hereinafter "Participation Payments.")  More specifically, Plaintiff would receive fifteen percent of any cash distribution or other amounts paid to Defendant and/or any of its affiliates (collectively, the "Penson Company") "for each Deal consummated by a Penson Company during [Plaintiff's] employment . . . ."  (Id. § 2.2.)

The Written Agreement contemplated several different circumstances of Plaintiff's possible termination.  If Defendant terminated Plaintiff for cause, Plaintiff would not receive any further Participation Payments.[1]  (Id. § 3.2.1.)  If Defendant terminated Plaintiff without cause due to death or disability,

---

[1] The Written Agreement defines "Cause" as: (a) reasonable evidence that Plaintiff committed a felony, any lesser crime or offense involving the property of defendant or any Penson Company, or a crime or lesser offense involving moral turpitude; (b) any acts or omissions constituting gross negligence, willful misconduct or a breach of the duty of loyalty to defendant or any Penson Company; (c) any failure to perform satisfactorily duties for defendant or any Penson Company; (d) any material breach of the Agreement; or (e) any commission of an act of fraud or dishonesty toward defendant or any Penson Company.  (Am. Compl., Ex. A § 3.1.3.)

Plaintiff would be entitled to the fair market value of his rights to any current Participation Payments. (<u>Id.</u>) If Defendant terminated Plaintiff without cause for any other reason, Plaintiff would be entitled to payment of his base salary for the remainder of his employment term, plus any accrued but unused vacation time and accrued benefits. (<u>Id.</u> § 3.2.2.)

The Written Agreement further stated that "[n]o term or provision of this [Written Agreement] may be modified, amended, waived or discharged in any manner except by a written instrument executed by [Defendant and Plaintiff]." (<u>Id.</u> § 6.4.) Additionally, the Written Agreement provided that it constituted the entire agreement and understanding between the parties, (<u>Id.</u> § 6.5), and that neither party would be bound by any representation, promise or inducement except those expressly provided therein. (<u>Id.</u>)

By its terms, the Written Agreement expired on July 31, 2005, but could be renewed for an additional year if Defendant provided Plaintiff with written notice of its renewal. (<u>Id.</u> § 2.5.) Plaintiff does not claim that Defendant exercised its option to renew the Written Agreement by notifying Plaintiff in writing. Nevertheless, Plaintiff continued to work for Defendant in the same capacity. (Am. Compl. ¶¶ 15-16.)

4

After July 31, 2005, Plaintiff alleges that Edward Penson
(hereinafter "Penson"), President of Penson Development, made
various oral statements to him regarding his continued employment
status and right to receive Participation Payments as defined in
the Written Agreement.  (Id. ¶ 17.)  For example, in December
2005, Plaintiff told Penson that he hoped to earn $200,000 that
year, and Penson responded that Plaintiff would receive "much
more" than that figure because of the deals then pending.  (Id.)
In January 2006, after the Penson Company had closed on its
acquisition of a property located in Brooklyn, New York, Penson
told Plaintiff that he would receive his fifteen percent.  (Id. ¶
18.)  In the summer of 2006, Penson told Melissa Barbera
(hereinafter "Barbera") that Plaintiff had an "employment
agreement," and that he was entitled to "profit participation."
(Id. ¶ 19.)

Throughout his employment, Plaintiff alleges that the Penson
Company consummated several Deals, and that Plaintiff provided
valuable services to Defendant in connection with these Deals.
(Id. ¶¶ 20-21.)  For example, in March 2005, Mohegan Apartments
Associates sold the Mohegan Apartments for approximately
$17,100,000.  (Id. ¶ 21.)  Plaintiff helped structure the sale,
assisted and advised in all facets of negotiation, secured and
supervised the appropriate sales broker, and attended the closing

5

in place of Penson.  (Id.)  As a result of this and other Deals
consummated during Plaintiff's employment, both during the period
governed by the Written Agreement and after, Plaintiff alleges
that the Penson Company received cash distributions and/or other
applicable revenue, but did not pay Plaintiff any Participation
Payments.  (Id. ¶ 22.)

In the fall of 2006, Plaintiff ran for public office in
Greenwich, Connecticut.  (Id. ¶ 23.)  After losing the election,
Plaintiff continued to work for Defendant in the same capacity
that he had before the election.  (Id.)  On May 22, 2007,
Plaintiff informed Penson that he would run for local office
again in the fall of 2007.  (Id. ¶ 24.)  Barbera, then General
Counsel of Defendant, informed Plaintiff that he could not
continue working for Defendant if he lost the fall election.
(Id. ¶ 25.)  On August 1, 2007, Barbera asked Plaintiff to sign a
letter of resignation.  (Id. ¶ 26.)  Plaintiff refused to sign
the letter.  (Id.)  As a result, on August 3, 2007, Defendant
terminated Plaintiff's employment, effective immediately.  (Id. ¶
27.)

On December 12, 2007, Plaintiff filed suit, alleging that
Defendant breached the Written Agreement and oral contracts and
unlawfully reduced his wages by failing to pay him Participation
Payments earned during his employment.  In addition, Plaintiff

6

seeks a declaratory judgment that he retains the right to "current" Participation Payments pursuant to the Written Agreement.

## II. MOTION FOR RECONSIDERATION

The Court first addresses Plaintiff's Motion to Reconsider the Court's December 8, 2008 denial of leave to file a Second Amended Complaint.

### A.  Legal Standard

The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (holding that a motion for reconsideration "is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.")

7

Furthermore, a motion for reconsideration is not one in which a party may reargue "those issues already considered when a party does not like the way the original motion was resolved." In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996.) Thus Local Rule 6.3 should be "narrowly construed and strictly applied" to avoid repetitive arguments already submitted to the Court. Nat'l Cong. for Puerto Rican Rights v. City of New York, 191 F.R.D. 52, 53 (S.D.N.Y. 1999) (citation omitted.) Moreover, the parties "may not address facts, issues or arguments not previously presented to the Court," U.S. Titan v. Guangzhou Zhen Hua Shipping Co., Ltd., 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted), because a motion to reconsider should never act "as a substitute for appealing from a final judgment," Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 113 (S.D.N.Y. 1997) (citation omitted.)


B.  Discussion

Plaintiff argues that the Court was in error precluding him from filing a Second Amended Complaint to add a claim that Defendant fired him for engaging in protected political activity in violation of Labor Law § 201-d.  (Plaintiff's Memorandum of Law in Support of His Motion for Reconsideration at 2-3.) Plaintiff alleges that he was not allowed "an opportunity to

8

brief his request to amend the pleadings," that the Court did not provide any justification for its ruling and overlooked Federal Rule of Civil Procedure 15(a), which requires that leave to amend a complaint be freely granted when justice so requires.  (Id.)

First, Plaintiff's argument that he did not have an opportunity to brief his motion for leave to file a Second Amended Complaint is without merit.  In fact, both parties had the opportunity, in their respective letter briefs, to present the substance of their arguments to the Court.  By letter dated December 1, 2008, Plaintiff set forth his factual and legal position, including analyses of relevant case law and statutory standards.  In addition, the Court reviewed Plaintiff's Proposed Second Amended Complaint.

Turning to Rule 15(a), Plaintiff is correct that it requires this Court to grant leave to amend freely "when justice so requires."  Fed. R. Civ. P. 15(a).  However, a district court has discretion to deny leave for good reason, including "'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendments.'"  Dluhos v. Floating and Abandoned Vessel Known as New York, 162 F.2d 63, 69 (2d Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962.))

The Court denied Plaintiff leave to file a Second Amended Complaint because permitting Plaintiff to raise new claims more than nine months after Defendant's motion to dismiss the Amended Complaint was fully submitted would have caused undue prejudice to Defendant.   If leave had been granted, Defendant would have been compelled to undertake the additional and considerable expense of filing a second motion to dismiss.   There was no reason to permit amendment where the proposed Second Amended Complaint did not assert any additional facts not already before the Court, nor did Plaintiff explain his failure to include this claim in either his first Complaint or his Amended Complaint. Indeed, Plaintiff has failed to justify his failure to seek leave to amend before Defendant's Motion to Dismiss was fully submitted.   See Priestley v. American Airlines, Inc., No. 89 Civ. 8265, 1991 WL 64459, at *1 (S.D.N.Y. April 12, 1991) ("[L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading.").

Consequently, considering the undue prejudice to Defendant that would result from Plaintiff's eleventh hour request, coupled with Plaintiff's unexcused delay for making such a request, the Court properly denied Plaintiff leave to file a second amended

10

complaint.  Therefore, Plaintiff's motion to reconsider the
Court's December 8, 2008 Order is DENIED.

### III. MOTION TO DISMISS

A.  Legal Standard

For a complaint to survive dismissal under Federal Rule of
Civil Procedure 12(b)(6), the plaintiff must plead "enough facts
to state a claim to relief that is plausible on its face." Bell
Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007.)  In other
words, a plaintiff must satisfy "a flexible 'plausibility
standard,' which obliges a pleader to amplify a claim with some
factual allegations in those contexts where such amplification is
needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d
143, 157-58 (2d Cir. 2007.)  "[A] plaintiff's obligation to
provide the grounds of his entitlement to relief requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Twombly, 127 S.Ct.
at 1964-65 (quotation marks omitted.)  Further, in deciding a
motion to dismiss, the court "must accept as true all of the
factual allegations set out in plaintiff's complaint, draw
inferences from those allegations in the light most favorable to
plaintiff, and construe the complaint liberally." Roth v.
Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted.)

11

However, "general, conclusory allegations need not be credited
... when they are belied by more specific allegations of the
complaint." Mortimer Off Shore Servs., Ltd. v. Fed. Republic of
Germany, No. 05 Civ. 10669, 2007 WL 2822214, at *7 (S.D.N.Y.
Sept. 27, 2007.)

In deciding a motion to dismiss, a court may properly
consider the complaint and all appended papers. See Rothman v.
Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion
to dismiss, we have deemed a complaint to include any written
instrument attached to it as an exhibit or any statements or
documents incorporated in it by reference.")  However, with
respect to Rule 12(b)(6) motions, a court may not consider
factual matters submitted outside of the complaint unless the
parties are given notice that the motion to dismiss is being
converted to a motion for summary judgment under Rule 56, and are
afforded an opportunity to submit additional affidavits. See
Festa v. Local 3 Int'l Bhd. of Elec. Workers, 905 F.2d 35, 38 (2d
Cir. 1990.)  The Court addresses Defendant's arguments relating
to each cause of action in turn.

B. Defendant's Motion to Dismiss Plaintiff's Breach of
Contract Claim

Plaintiff's first cause of action alleges that Defendant
breached its contract with Plaintiff by refusing to "honor[] its
obligation under the written and/or oral contracts to pay
[Plaintiff] the Participation Payments" for certain deals that
Defendant completed and received cash distributions for during
his employment.  (Id. ¶ 31.)  Defendant argues that this claim
should be dismissed because there was no agreement in place
between the parties in August 2007.

It is well-settled under New York law that to establish a
claim for breach of contract, a plaintiff must prove the
following elements:  (1) the existence of a contract; (2)
plaintiff's performance of the contract; (3) defendant's breach
of the contract; and (4) damages suffered as a result of the
breach.  See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d
Cir. 2000) (citation and quotation marks omitted.)  In pleading
such a claim, a plaintiff must provide specific allegations as to
an agreement between the parties, the terms of that agreement,
and what provisions of the agreement were breached as a result of
the acts at issue.  See Americorp Fin., Inc. v. St. Joseph's
Hosp. Health Ctr., 180 F. Supp. 2d 387, 390 (N.D.N.Y. 2001); Levy
v. Bessemer Trust Co., N.A., No. 97 Civ. 1785, 1997 WL 431079, at

13

*5 (S.D.N.Y. July 30, 1997.)

The Amended Complaint attaches the Written Agreement between Plaintiff and Defendant pursuant to which Plaintiff agreed to serve as Defendant's Director of Acquisitions in exchange for a base salary plus Participation Payments for certain Deals consummated during Plaintiff's employment.  By its terms, the Written Agreement expired on July 30, 2005, and Plaintiff does not claim that Defendant exercised its option to renew the Written Agreement by providing Plaintiff with the requisite notice of such renewal in writing.

Although in some cases the parties may orally agree to renew a contract despite a requirement of written renewal, see In Design v. Kmart Apparel Corp., 1991 U.S. Dist. LEXIS 6404 (S.D.N.Y. May 14, 1991), the Written Agreement expressly provided that no term may be waived or amended unless in writing executed by both parties.  The Court concludes that, contrary to Plaintiff's arguments otherwise, the Written Agreement did not automatically renew each year.

Nevertheless, Plaintiff additionally alleges that after July 31, 2005, the parties entered into new oral contract incorporating some of the terms of the Written Agreement.  The Amended Complaint alleges that, after July 31, 2005, Plaintiff continued to work for Defendant in the same capacity and tendered

14

the same services, and that Defendant made various oral promises
to him regarding his continued employment and right to
Participation Payments as defined in the Written Agreement.
Defendant argues that the alleged promises are too vague to
constitute the basis for concluding that an oral agreement
existed.

Regarding the Written Agreement, the Amended Complaint
sufficiently alleges the existence of that Agreement and its
terms.  The Amended Complaint also alleges performance by
Plaintiff.  In addition, it does appear that Plaintiff has
sufficiently alleged that the Mohegan Apartments Deal was
consummated during the term of his Written Agreement.  Finally,
the Amended Complaint alleges actual monetary damages as a result
of the breach.

Regarding the alleged new oral agreement, accepting as true
all of the factual allegations set out in Plaintiff's complaint
and drawing inferences from those allegations in the light most
favorable to Plaintiff, Defendant's alleged oral promises are
sufficiently clear and specific to permit the inference that the
parties agreed to continue Plaintiff's employment.  The Amended
Complaint, however, does not specifically allege what Deals were
consummated during the alleged oral contract nor how the
Participation Payments beyond salary were to be calculated during

15

that period.

Therefore, accepting Plaintiff's factual allegations as true and drawing all inferences in his favor, the Court finds that Plaintiff has sufficiently pleaded a cause of action for breach of the written contract.  However, the Plaintiff has not pled with sufficiency the terms of the oral contract nor what deals were consummated during the term of the alleged oral contract. For these reasons, Defendant's Motion to Dismiss Plaintiff's first cause of action for breach of contract is DENIED as to the written contract and GRANTED as to the alleged oral contract, with leave to amend.


   C. Defendant's Motion to Dismiss Plaintiff's Declaratory
   Judgment Claim

Plaintiff seeks a declaratory judgment that he retains the right to "current" Participation Payments for Deals that the Penson Company completed, but had not received a cash distribution for, when it terminated Plaintiff's employment in August 2007.  Defendant contends that the Written Agreement bars Plaintiff from receiving post-employment Participation Payments. (See Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") at 10-11.)

   Pursuant to the Written Agreement, if Defendant terminated

Plaintiff for cause, Plaintiff would immediately forfeit his "then current Participation Rights." (<u>Id.</u> § 3.2.1.)  The Amended Complaint alleges, however, that Defendant terminated Plaintiff without cause.  As to the Written Agreement it is clear that it expired and Plaintiff was not terminated, thus Plaintiff has sustained his burden to allege that any consummated deals during the term of the Written Agreement would require his participation to be honored.  However, any right to participation under the alleged oral agreement or what deals were consummated during the term of his alleged oral agreement employment have not been sufficiently pled.  Accordingly, Defendant's Motion to Dismiss Plaintiff's second cause of action for declaratory judgment is DENIED as to the written agreement, but GRANTED as to the alleged oral agreement with leave to replead.

### C. Defendant's Motion to Dismiss Plaintiff's Unlawful Reduction of Wages Claim

Plaintiff's third cause of action sets forth a claim pursuant to Labor Law § 190 <u>et</u> <u>seq.</u>  In brief, Plaintiff seeks attorneys' fees and liquidated damages under Labor Law § 198 based on the contention that Defendant's refusal to pay him Participation Payments for certain Deals completed during his employment constitutes an "unlawful reduction of his wages" in

17

violation of Labor Law § 193.  (Id. ¶¶ 1, 39.)

Labor Law § 193(1) provides, with certain exceptions that are not applicable in this case, that "no employer shall make any deduction from the wages of an employee." N.Y. Labor Law § 193(1). Defendant argues that this claim should be dismissed because Plaintiff: (1) acted in an executive capacity, and therefore was not an "employee;" and (2) has not alleged an improper deduction from his wages. (Def. Mem. of Law at 11-13.)

For purposes of Article 6 of the Labor Law, the term "employee" means "any person employed for hire by an employer in any employment." N.Y. Labor Law § 190(2). Despite this broad definition, several courts have held that a person functioning in an executive capacity is not an employee for Article 6 purposes. See, e.g., Carlson v. Katonah Capital, LLC, 10 Misc. 3d 1076(A) (Sup. N.Y. 2006.)

Most recently, however, the New York Court of Appeals held that "an 'executive' falls within the ambit of the protections afforded to 'employees' under sections 190 and 193 of the Labor Law." Pachter v. Bernard Hodes Group, Inc., 891 N.E.2d 279, 281 (N.Y. 2008). Indeed, the "text of Article 6, as well as its context, and weight of case law applying the statute, support a broad interpretation of the definition of 'employee,' and the conclusion that executives, professionals, and managers and

administrators are not categorically excluded." <u>Miteva v. Third</u>
<u>Point Mgmt. Co.</u>, 323 F. Supp. 2d 573, 585 (S.D.N.Y. 2004.)   As
such, Plaintiff is not categorically excluded from the definition
of "employee" under Labor Law § 190(2) and may be entitled to
protection under Labor Law § 193.

Defendant argues that, even if Plaintiff is entitled to
protection under Labor Law § 193 as an "employee," Plaintiff has
failed to allege that Defendant made an improper deduction from
his wages.  (Def.'s Mem. at 12.)  Labor Law § 190(1) defines
wages as "the earnings of an employee for labor or services
rendered, regardless of whether the amount of earnings is
determined on a time, piece, commission or other basis."  N.Y.
Labor Law § 190(1).  The statute "contemplates a more direct
relationship between an employee's own performance and the
compensation to which that employee is entitled."  <u>Truelove v.</u>
<u>Northeast Capital & Advisory, Inc.</u>, 715 N.Y.S.2d 366 (N.Y. 2000).
Thus, "discretionary additional remuneration, as a share in a
reward to all employees for the success of the employer's
entrepreneurship, falls outside the protection of the statute."
<u>Id.</u>

The Amended Complaint alleges that the Participation
Payments for certain Deals completed during Plaintiff's
employment constitute "wages" within the meaning of Labor Law §

19

190(1).  First, the Written Agreement specifically provided that
Plaintiff "shall be entitled to . . . 'Participation Payments' .
. . for each Deal consummated by a Penson Company during
[Plaintiff's] employment."  (Am. Compl., Ex. A § 2.2) (emphasis
added.)  Plaintiff, therefore, was guaranteed Participation
Payments upon consummation of a Deal as a term of his employment.
Participation Payments, moreover, were clearly tied to
Plaintiff's individual performance, as Plaintiff's duties
consisted of identifying potential Deals and working to
consummate them.  See Fiorenti v. Central Emergency Physicians,
723 N.Y.S.2d 851, 855 (N.Y. Sup. Ct. 2001) (bonuses were wages
where the formula for determining the bonus amount accounted for
the employee's own personal productivity and the objective
success of the venture.)  Further, the Written Agreement clearly
laid out the circumstances under which Participation Payments
were to be paid; both how much and when, and did not involve
management discretion so as to render them incentive
compensation.  Compare Schutty v. Pino, 1997 U.S. Dist. LEXIS
9266, *3 (S.D.N.Y. 1997) (bonuses wages where it was determined
by a fixed formula based upon the gross fees earned by the firm
for the year) with Tischmann v. ITT/Sheraton Corp., 882 F. Supp.
1358, 1370 (S.D.N.Y. 1995) (payments under incentive plan not
wages where employer had right to determine what amount, if any,

employees were owed.)   Finally, under the agreement Plaintiff's Participation payments "shall be reduced by any Base Salary paid to [Plaintiff]".  (Am. Compl., Ex. A § 2.2.)  That term clearly indicates that Participation Payments are wages.

In sum, the Amended Complaint alleges that Plaintiff was an employee within the meaning of the statute and that Defendant made an improper deduction from his wages.  Therefore, the Defendant's Motion to Dismiss Plaintiff's third cause of action is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is DENIED, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED in part with leave to amend and DENIED in part.

Plaintiff SHALL FILE a Second Amended Complaint, conforming to this Memorandum Order, within thirty (30) days of the date of this Order; Defendant SHALL move or otherwise Answer within (50) days of the date of this Order.

SO ORDERED.

Dated:   New York, New York
         March 31, 2009

                                   _Deborah A. Batts_
                                   Deborah A. Batts
                                   United States District Judge